J. A. BLADES et al., Appellants, v. GEORGE E. HAWKINS et al.

Division Two, February 27, 1912.

1. **CONTRACT WITH COUNTY: Entered of Record: Acceptance: Duplicates in Writing: Section 2779.** When a county court enters of record its order for the employment of an expert accountant for work to be performed wholly in the future, setting forth the details of the employment and the compensation to be paid, and said accountant files his written acceptance of the employment, the contract, so far as its mode of execution is concerned, is complete. The purpose of Sec. 2779, R. S. 1909, saying that duplicate copies of every such contract shall be executed, one of which shall be filed with the county clerk and shall not be taken from his office except to be used as evidence in some legal matter, and that, in case of variance between the copies, the one on file with the clerk shall control, was to preserve controlling evidence of the terms of the contract in case of a dispute as to its construction. The validity of the contract is not, by that section, made dependent on its having been executed in duplicate.

2. **COUNTY COURTS: Powers: Must be Expressed or Necessarily Implied.** The power of the county court to contract, or to do any other act, must be found in an express legislative grant, or else implied as essential to the proper execution of powers expressly granted or duties expressly imposed. Nor will power to do a thing be implied to belong to a county court unless

it is cognate to the purpose for which the court was created. Sec. 6759, R. S. 1899 (Sec. 2778, R. S. 1909), detailing the scope of the powers of a county court or other municipality, is but declaratory of the common law.

3. ————: **Power to Employ Accountant.** The county court had power in 1907 to employ an expert accountant to examine and audit the official accounts and public records of present and prior county officials, for the purpose of ascertaining whether or not they were indebted to the county or were holding back moneys belonging to it. This power is not expressed in the statutes, but is implied as essential in those expressly granted, which make the county court the fiscal agent of the county, and impose upon it a supervisory control over the collection and preservation of its funds, require the treasurer, collector, sheriff, marshal, clerks, constables and other officers chargeable with money belonging to the county, to make a true report and render a true account and make settlement with it, and require the court to audit and adjust all accounts to which the county shall be a party and enforce the collection of any money found due the county.

4. ————: ————: **Sec. 3730; Duties to Audit on Court.** Section 1778, R. S. 1899 (Sec. 3730, R. S. 1909), saying that, in settlements made by county courts with treasurers and other officers holding funds, it shall be the duty of the court or some judge thereof to ascertain, by actual examination and count, the amount of money in the hands of the officer, etc., has nothing to do with the power of the county court to employ an expert accountant to audit the accounts of all county officers, with the view of ascertaining if any of them are indebted to the county. That statute relates to the examination and count of balances in the hands of the officials when they make settlements, and its purpose is to prevent a perfunctory settlement.

Appeal from Greene Circuit Court.—*Hon. J. T. Neville.* Judge.

AFFIRMED.

G. W. *Thornbury,* O. F. *White* and E. J. *White* for appellants.

*Sebree & Farrington* and J. W. *Suddath & Son* for respondents.

PER CURIAM.—This case was certified to this court by the St. Louis Court of Appeals, one of

the judges dissenting from the opinion on the ground that, in his judgment, it is in conflict with the decision of this court in the case of Wolcott v. Lawrence County, 26 Mo. 277. We think there is no such conflict. The following majority opinion of the Court of Appeals, written by GOODE, J., is approved and adopted as the opinion of this court, and the judgment is affirmed.

---

This is a suit in equity to enjoin the respondents, as judges of the county court of Stone county, from issuing to L. U. Crawford a warrant to pay said Crawford for services rendered as an expert accountant in examining, checking up and auditing the accounts of various officers of Stone county, pursuant to employment by the county court. The suit was instituted at the relation of certain citizens and taxpayers, who seek to prevent issuance of the warrant for the reason that the employment of Crawford was without authority of law, and public money cannot be disbursed to pay him.

Respondents answered that on or about April 12, 1907, certain of the officers of Stone county then in office, and certain other persons who theretofore had been in office, were delinquent in their accounts, and had failed to pay to the treasurer of the county large sums of money due the county, aggregating five thousand dollars; that certain of the officers had made incorrect returns to the court of the earnings of their respective offices, and other persons who had occupied the offices of treasurer and collector had made incorrect and false settlements of their accounts, and had led the court to believe they had made correct returns of the fees due from their respective offices; that knowledge of this had come to respondents in a general way, but they were not apprised of who were delinquent, or in what particulars the delinquencies con-

sisted; that though respondents and their predecessors, as judges of the county court, had performed to the best of their ability the duty of examining the accounts and records of the various officers of the county, yet neither respondents nor their predecessors were expert accountants or auditors; that respondents were not able to audit the books of the county and recover the amount of the items delinquent because they lacked the necessary skill, and unless said work was done the amount of the delinquency would be wholly lost; that it would be greatly to the interest of the taxpayers and the financial affairs of the county for an accountant to be employed to audit the various books of the officials then in office and theretofore in office; wherefore respondents entered into a contract with L. U. Crawford, an expert accountant, to audit said books and check up the accounts of the various officers for such periods as the court might direct; that Crawford was to receive for his services ten dollars a day and expenses limited to his board while employed in the work and one trip to and from Kansas City, Missouri, his place of residence; that said contract was entered into in good faith by the county court through an agent appointed for that purpose, to-wit, the prosecuting attorney; that shortly after he was hired, Crawford began the work of auditing the books, checking up the accounts of the county officers and making reports of his action to the court; that he had completed his services, and the compensation due him under the contract amounted to about one thousand dollars; that from the work done by him in investigating the accounts of officers and auditing the books the county had recovered from delinquent officials, either now or theretofore in office, and from other persons holding money belonging to said county, the sum of more than two thousand dollars, and the further sum of three thousand dollars, still delinquent, would be recovered; that without said services all this

money would have been lost to the taxpayers. Respondents denied the contract was without authority of law, and affirmed it was entered into in the manner provided by law, and denied certain other allegations of the petition which need not be stated.

After a temporary restraining order had been issued by the circuit court of Stone county, the case went on change of venue to Greene county, where it was tried, and judgment entered finding the issues for respondents on the merits, dissolving the temporary injunction and dismissing the petition.

It appears from the record of the county court of Stone county that on or about April 12, 1907, the court ordered the prosecuting attorney to negotiate with expert accountants for the purpose of employing a suitable one to investigate the records and submit a report to the court. About the same date the court spread on its record an entry reciting that, whereas the court had found it advisable to examine the accounts of the various county officers, it was ordered that L. U. Crawford be authorized to check up, audit and examine the accounts of said officers during such periods as the court might direct, and make a report in detail of his findings; that said Crawford be paid for his services ten dollars a day and expenses, it being understood his expenses should be limited to board and car fare for one trip from Kansas City and return; that while the examination of the books was in progress each officer should render every assistance possible to expedite the work, and Crawford should be given free access to all records and files in the various offices which he might desire to use in the investigation. Crawford accepted this employment in writing, agreeing to check up and audit the accounts of the county officers for such periods as might be designated by the court, and on the terms expressed in the order. This acceptance was filed and spread on the record. It was admitted at

the trial that Crawford had performed a large part of the services contracted for at the time the injunction was issued, and that at said date the respondents were about to order a warrant on the treasury to pay for said services at the rate of ten dollars a day. It was further admitted Crawford began performance of the work shortly after he was employed; that he performed the services for which he was hired, and audited the books of the various officers then in office or who had been in office theretofore; that he had discovered discrepancies and delinquencies to the amount of $2,229.24 in the accounts of certain officials, to-wit, three ex-county treasurers, an ex-sheriff, the cashier of the county depositary, and one other person; that these sums due the county were discovered by Crawford during his investigation, and had been paid into the treasury. It was further admitted there was $3,000 more which Crawford claimed to have discovered to be due from other men holding office and who had theretofore held office, but which relators denied was due the county. It was admitted respondents were not expert accountants, but were all farmers; that all the relators, except one, who are asking an injunction against paying Crawford, are bondsmen of one of the delinquent officials; that, if the warrant should be issued and paid, the respondents and the prosecuting attorney would refuse to take action to recover the amount of it, as they contend it is a legal obligation. The temporary injunction was sued out June 14, 1907. On June 17th, pursuant to an order of the county court, a contract in duplicate was entered into between W. E. Renfro, prosecuting attorney and agent of the county, and Crawford. This contract embodied the terms theretofore stated and contained in the original order of the county court for the employment of Crawford, entered April 12, 1907.

The right of the county court to issue a warrant to Crawford in payment for his services is denied on

two grounds: First, because said court had no authority to employ an accountant to examine and audit the books of the county and the accounts of its officers; second, because, if it had this power, the contract of employment was not entered into in the manner provided by law.

·In support of both these grounds certain statutes are invoked, and among others section 6759, Revised Statutes 1899 (Sec. 2778, R. S. 1909), which says no county, city, etc., shall make a contract unless the same is within the scope of its powers or is expressly authorized by law, or unless it is made on a consideration wholly to be performed or executed subsequent to the making, and that the contract, including the consideration, shall be in writing, dated when made and subscribed by the parties thereto or by an agent authorized by law and duly appointed in writing. The next section (sec. 6760) says duplicate copies shall be executed of every such contract, one of which shall be filed in the office of the clerk of the county court if made by a county, or with the proper officer if the contract is made by some other body politic; that it shall not be taken thence except to be used as evidence in some legal matter or cause, and that, in case of variance between the copies, the one on file with the designated custodian shall control the construction. The contract in question was not reduced to duplicate writings signed by Crawford and Renfro, agent of the county, until June 17th, three days after the temporary injunction was issued, and after the work for which Crawford was employed had been done. For this reason, it is contended, the employment was void, and the county court was without authority to pay Crawford. This is not the interpretation put on the statutes we have cited by the Supreme Court. In Globe Furnishing Co. v. School Dist., 51 Mo. App. 549, it was held by a majority of the members of the

Kansas City Court of Appeals that failure to enter into a contract with a public municipality (in said case a school district) by executing duplicate copies in writing, was fatal to the validity of the contract. One of the judges dissented, and held that, when such a contract was reduced to writing and signed by the parties, it became binding and operative, as the statute requiring duplicate copies was directory.     In Saleno v. Neosho, 127 Mo. 627, the question was presented for decision to the Supreme Court.     In said case it appeared the city of Neosho had passed an ordinance granting the plaintiff a waterworks franchise, and agreeing to pay a certain sum yearly for water hydrants used by the city.     After this ordinance was ratified by a vote of the people, plaintiff filed with the board of aldermen his written acceptance of the contract contained in the ordinance.     It thus will be seen the cause is identical with the present one as regards the form of the contract originally entered into, because, in the present case, the county court entered of record an order employing Crawford for a specified work on specified terms, and he filed his written acceptance.   The Supreme Court said in the Neosho case the validity of the contract for the hydrants was in no way dependent on its having been executed in duplicate as required by the statute aforesaid, as the purpose of said statute was to provide controlling evidence of the terms of the contract in case a dispute arose regarding its terms.   See, too, Aurora Water Co. v. Aurora, 129 Mo. 540; McShane v. School Dist., 70 Mo. App. 624.   When the county court of Stone county entered of record its order for the employment of Crawford for work wholly to be performed in the future, setting forth the details of the employment and the compensation to be paid, and Crawford filed his written acceptance of the employment, we think, under the above authorities, the

contract was complete as far as the mode of its execution is concerned.

The more important proposition, and the one chiefly controverted, is as to the power of the county court to employ an expert accountant to audit the public records and the accounts of present and prior officials. Its power to do so must be found in some express statutory grant, or else implied as essential to the proper execution of powers expressly granted or duties expressly imposed. Section 6759, Revised Statutes 1899, prohibits counties and other municipal bodies from making any contracts not within the scope of the powers of the municipality or expressly authorized by law. This provision is but declaratory of the common law; for these public corporations never have been deemed to possess authority to contract, or do any other act, unless the power was granted by statute or could be implied because necessary and incidental to the due performance of powers granted or duties enjoined. This doctrine applies to county courts and commissioners, as well as to the governing bodies of other subordinate political corporations. [7 Am. & Eng. Ency. Law, sec. 789; Wolcott v. Lawrence Co., 26 Mo. 277; Sturgeon v. Hampton, 88 Mo. 204.] There is in our statutes no grant of authority to a county court to employ an expert to audit and examine the books and accounts of the county and its officers. Hence, if this authority existed in the present instance, it was because the law implied it as essential to the due exercise of powers specifically vested in the county court by statute or the performance of a duty specifically required of said tribunals. The courts are conservative in implying powers not expressly given. One limitation imposed by law on these implications is that no power will be implied to belong to a public corporation unless it is cognate to the purpose for which the corporation was created. [Grant Co. v. Bradford, 72 Ind. 455; 2 Abbott, Mun

Corp., sec. 708, p. 1672.] Therefore, in determining whether or not the county court of Stone county had authority to employ an expert to look over official books and accounts, we must call to mind the duties of such a court. A county court is the general fiscal agent of the county, and is possessed of a supervisory power over the collection and preservation of its funds. Various officials, such as treasurers, collectors, sheriffs, marshals, clerks and constables, as well as other persons chargeable with money belonging to the county, are required to report to and make settlements with said court. All these officials and persons must render accounts to the county court at stated terms thereof, pay any balance due the county into the treasury, take duplicate receipts, and deposit them with the clerk of the court. [Sec. 6781, and other sections, Chap. 97, R. S. 1899.] If any person charged with the duty of reporting to and settling with the court fails to render a true account, it is made the duty of the court to adjust the account of the delinquent according to the best information it can obtain, ascertain the balance due, and require said balance to be paid into the treasury. Other sections following section 6782 of the statutes provide for proceedings by the court against delinquents. In addition to said provisions, section 6790 requires the court to audit and adjust all accounts to which the county shall be a party, order payment out of the treasury of any sum of money found due by the county on such accounts, enforce the collection of money due it, order suit to be brought on the bond of any delinquent, issue process to secure the attendance of any person deemed necessary to be examined in the investigation of any account, compel the attendance of such person and the production of accounts, books, documents and papers, and examine all parties and witnesses on oath touching the investigation of any account. The various provisions of the statutes de-

monstrate that it is not only within the power, but is the duty, of the county court to look after public funds, examine and investigate the accounts of the different officials and other persons, enforce the collection of money due the county, and order suits to be brought on the bonds of delinquents. In short, responsibility for the safety of public moneys, the accuracy and honesty of the accounts and settlements of officials, and the collection of defalcations, is imposed on county courts. The question for decision is whether the express delegation of those powers and duties by the Legislature carried with it the authority to employ an expert to look over books and documents in order to ascertain whether officials and other persons chargeable with public moneys had rendered correct and faithful accounts, and had made just settlements with the court. In our opinion this question ought to be answered in the affirmative. While it is true the law is strict in limiting the authority of these courts, it never has been held that they have no authority except what the statutes confer in so many words. The universal doctrine is that certain incidental powers germane to the authority and duties expressly delegated, and indispensable to their performance, may be exercised. [7 Am. & Eng. Ency. Law (2 Ed.), pp. 987, 989, and cases cited in notes.]

In Boggs v. Caldwell Co., 28 Mo. 586, the Supreme Court allowed a bill for services rendered in indexing the deed records of a county pursuant to an employment by the county court. In the brief against the demand Wolcott v. Lawrence Co., supra, was cited in support of the proposition that the county court was without power to make the contract; but the Supreme Court deduced the power from the duty of the county court to look after the property of the county, and said that, though it was the duty of recorders to make up their indexes without extra compensation, yet in the course of time it might happen these books

would become unfit for use and need to be renewed. We regard that case in point, for, though the work was different from what respondents contracted for, it was not more essential to the performance of a statutory duty of the county court.

The precise question at bar was decided in Duncan v. County Comm'rs, 101 Ind. 403. Those commissioners, who in Indiana correspond to our county courts, had employed said plaintiff to examine and report on the accounts of the treasurer of the county, and the plaintiff, having done the work, asked payment for his services. The Indiana statute relied on as authorizing the employment was one giving the board of commissioners power to audit the accounts of all officers having the handling and disbursement of the funds of the county, a statute of no broader scope than those we have cited. It was held the commissioners had full authority with reference to the adjustment of public finances, and, as incident thereto, power to employ an accountant.

As impugning the authority of respondents to make the contract in dispute, much stress is laid on section 1778, Revised Statutes 1899. Said section says that in the settlement required by law to be made with county courts by treasurers and other officers holding funds, it shall be the duty of the county court or some judge thereof to ascertain, by actual examination and count, the amount in the hands of an officer and to what particular fund it appertains, and that such examination and count shall include all funds on hand to the day when the settlement is made. Because the section requires the county court, or some judge thereof, to ascertain, by actual examination and count, the balances in the hands of officials, it is argued that no one else can be employed to do or assist in the work. This would not follow necessarily, we think, but do not decide, for in our opinion said statute has nothing to do with the present case. It

relates to the examination and count of balances in
the hands of officials when they settle with the county
court.  The idea is to prevent a perfunctory settle-
ment by requiring the court to make an actual exam-
ination and count of the balances and funds, and as-
certain to what particular fund the money belongs.
Crawford was not hired for such a work, was not hired
to examine the account tendered by some official at
one of the periodical settlements required by law, nor
to count the funds in his hands.  He was employed to
go over the books, papers and accounts of officials who
were in office or theretofore had been, during such
periods as the court might direct.  Settlements had
been made by different officials at different times dur-
ing those periods; and, according to the answer, which
there is no evidence to disprove, the court had exam-
ined and counted the balances as required by law
when the settlements were made.  Nevertheless, re-
spondents had heard of defalcations by certain offi-
cials, and of discrepancies in their accounts which had
escaped attention at these settlements.  In order to
ascertain whether there was merit in these reports,
respondents, who were farmers and not trained in
bookkeeping or the investigation of accounts, deemed
it necessary to employ an expert.  It turned out the
reports were well founded, and a substantial sum was
paid into the treasury without controversy as the re-
sult of the expert work.  We deem authority to con-
tract for such work is not only wholesome, but indis-
pensable to an accurate knowledge by the county court
of the financial condition of the county.

The judgment is affirmed.