Buford EVERETT, H. W. Jenkins, M. C. Edson, and Gladstone Teaney, on behalf of themselves and all other taxpayers in the County of Clinton, Respondents,

v.

The COUNTY OF CLINTON; David Plummer, County Clerk; Everett Pittman, County Treasurer; Plattsburg Special Road District; Cameron Special Road District; Lathrop Special Road District; and Jack Johnson, Appellants.

No. 44505.

Supreme Court of Missouri.

Division No. 1.

Sept. 12, 1955.

Melvin E. Griffin, Pros. Atty., Plattsburg, J. B. Beavers, Cameron, Gerald Cross, Lathrop, Marcy K. Brown, Jr., Kansas City, for appellants.

Thomas R. Oswald, Jr., Shelbina, Charles H. Howard, Jefferson City, Hendren & Andrae, by Henry Andrae, Jefferson City, for respondents.

DALTON, Presiding Judge.

This is a taxpayers' action to enjoin the alleged illegal expenditure of public funds by a county in the purchase and operation of a rock quarry, in the preparation and sale of crushed stone for road purposes and in the purchase of motor graders. The trial court granted the relief prayed and defendants have appealed.

Count one purports to be a class action by four taxpayers against Clinton County, the County Clerk and County Treasurer of said county, the Plattsburg, Cameron and Lathrop Special Road Districts of said county, and one Jack Johnson. It is alleged that the county had purchased a rock quarry and scales, lumber and a ticket dispenser for use in connection with the operation of the quarry; and that it had employed a scales operator. Johnson was alleged to be an independent contractor under contract with the county to crush stone at the quarry for $1.15 per ton. The several special road districts were alleged to have contracts with Clinton County under which they were obligated to buy and the county was obligated to sell crushed stone for the repair and construction of roads at $1.25 per ton at the county quarry. It was also alleged that the county was engaged in the commercial limestone business, selling to all buyers; and that the prosecuting attorney of the county had refused to bring this action.

It was further alleged that the "mentioned contracts, transactions, agreements, both written and oral, court orders, warrants drawn and to be drawn, and moneys paid and to be paid pursuant thereto, and all acts pursuant to all matters herein set forth are a chain of events constituting a single transaction which is illegal and void and results in illegal expenditures of public money and that each and every contract, transaction and act therein is separately and independently illegal and void and results in illegal expenditure of public money * * * that public money has been expended, is now being expended, and will in the future be expended, unlawfully and illegally, in pursuance of such contracts and transactions, above alleged * * *." Numerous specific statutory provisions, hereinafter referred to, were relied upon to show the illegality of the contracts and transactions.

In a second count plaintiffs sought to enjoin the alleged unlawful payment for motor graders from Class V funds of the 1953 county budget rather than from Class III funds.

The essential facts are not in dispute. Clinton County is a county of the third class. On June 10, 1949, the county purchased from the Plattsburg Special Road District a rock quarry, rock crusher, machinery and equipment. On June 19, 1951, and again on March 10, 1953, it purchased additional land for quarry purposes. On March 18, 1953, the county purchased a heavy duty Fairbanks and Morse Scale for use at the quarry and payment made was from "miscellaneous expenditures" in Class III of the 1953 budget. Lumber for the installation of the scales and a ticket dispenser were also purchased. On March 25, 1953, the county employed a scales operator at the quarry to weigh the crushed stone produced.

On March 10, 1953, the county entered into a written agreement with one Jack Johnson by which the county agreed to pay Johnson $1.15 per ton to crush and stockpile limestone rock to be taken from the county's quarry. Johnson agreed to furnish all the equipment (except scales) and to perform all of the labor for such operation at his own expense and to accept full

and sole responsibility and indemnify and save the county harmless from claims for damage and liability arising from the operation. Johnson further agreed to crush and stock-pile 20,000 tons of such stone at $1.15 per ton and such other additional amounts as the county might require within one year. Johnson furnished a $10,000 bond to guarantee faithful performance of his undertaking. It is admitted that the intention, plan and purpose of the contract was in part to provide crushed rock for road construction and improvement. Johnson crushed and stock-piled some 23,437 tons of stone for which he was paid under the contract.

On April 17, 1953, Clinton County entered into separate contracts with the Cameron, Plattsburg and Lathrop Special Road Districts (all located in the county) by which it agreed to furnish to each of the respective districts, at the county quarry at Plattsburg, 2,000 tons of crushed stone at $1.25 per ton, such stone to be used on roads in Clinton County. Each district agreed to buy and pay for 2,000 tons of such stone and the agreement provided for the purchase of additional stone when needed at the same rate. It is admitted that these contracts were fully performed prior to the trial of the cause.

During 1953, the county sold to various individuals and firms crushed rock at $1.25 per ton in the stock pile at the county quarry. Such crushed stone was used on private drives, driveway entrances, private property and some was re-sold. Appellants admit that the county sold approximately 400 tons of crushed stone from the county quarry to private property owners, but it contends the sales were intended for the protection of public roads at private drive intersections with public county roads.

The regular Clinton County budget for 1953 was adopted on January 21, 1953. On February 4, 1953, petitions were filed with the county court for a special election to be held to vote for or against a special 35-cent levy for road and bridge purposes in the several special road districts and in "County General Road District No. 1." The latter

district included the county outside the special districts. The election was held February 24, 1953, and the levy carried in the several districts and in County General Road District No. 1. Thereafter, on April 20, 1953, a budget for County General Road District No. 1 was adopted and spread on the records, entitled "The General Road Budget for 1953." This amended budget showed total estimated revenues, net $84,885.34, with estimated expenditures, as follows: Road and Bridge Maintenance, material, lumber and wood products $2000, crushed stone $40,000, miscellaneous $24,885.34. An order was further entered that $84,885.34 "be and is hereby appropriated, apportioned and set aside for the payment of proposed expenditures of General Road District No. 1, of Clinton County." Payments to Jack Johnson for crushed stone produced by him at the county quarry under his contract with the county were made by warrants drawn against this County General Road District No. 1, 1953 Budget.

It is admitted that public funds have been expended, as stated, in the purchase of quarry real estate, scales, lumber, a ticket dispenser and for Johnson under his contract for crushing and stock-piling stone; and the court found that "all was paid from tax money derived from a 35 cent special voted levy of the General Road District No. 1 of Clinton County."

It is admitted that the expenditure of public money under the contract between defendant Johnson and Clinton County "was not classified as a proposed expenditure in the regular January County Budget for 1953 and said expenditures were not shown by the records of the defendant county, as an estimated expenditure in the regular January County Budget for 1953, and said expenditures were not in any way included as a budget balance in the regular January County Budget for 1953 * * *." It is appellants' theory "that said expenditures arose and were made available as a result of special elections and * * * in compliance with the law."

The trial court enjoined the county from directly or indirectly operating the quarry,

from directly or indirectly producing or manufacturing crushed rock or stone products, from purchasing directly or indirectly machinery or equipment for use at the quarry, from selling or disposing of crushed rock to the special road districts or to other political subdivisions, corporations, or to persons for public or private purposes, from budgeting or expending public moneys for any of the aforesaid purposes and the further performance of the Johnson contract. The other defendants were enjoined from aiding or cooperating with the county in performing any of the prohibited acts.

Appellants first contend that the action cannot be maintained by the four respondent taxpayers; that no cause of action is stated and the trial court had no jurisdiction of the cause, as the petition failed to comply with the provisions of Section 49.500 RSMo 1949, V.A.M.S., providing an exclusive remedy; and that the action cannot be maintained as a class action under the pleadings and evidence because of the failure to comply with the provisions of Section 507.070 RSMo 1949, V.A.M.S., and Supreme Court Rule 3.07, 42 V.A.M.S.

█ We find no merit in these contentions. Section 49.500 provides a method by which fifty resident, solvent and responsible citizens of any county may, under the circumstances therein stated, have certain county contracts fully investigated, where it is alleged they were not entered into in good faith, or for a just consideration, and without due regard to the best interest of the county and, in such case, the circuit court may set aside, reform, or cause to be enforced any such contract as "the court shall deem best under the law and the facts." If the section has any application to void and illegal contracts, as distinguished from those which are only voidable and ill advised, it clearly does not provide the exclusive remedy by which a taxpaying citizen of a county may proceed to prevent the illegal expenditure of public funds. The applicable rule is "that if the statute gives a remedy in the affirmative, without containing any express or implied negative, for a matter which was actionable at common law, this does not take away the common-law remedy, but the party still may sue at common law, as well as upon the statute. In such cases the statute remedy will be regarded as merely cumulative. But where a new right or means of acquiring it are given, and an adequate remedy for violating it is given, in the same statute, then the injured parties are confined to the statutory remedy." Hickman v. City of Kansas, 120 Mo. 110, 117, 25 S.W. 225, 226, 23 L.R.A. 658; 1 Am.Jur. 411, Actions, Sec. 12. In this case the statutory remedy, if applicable, was merely cumulative and not exclusive, because taxpayers have always had the remedy of injunction at common law, without aid of statutory authority, to enjoin the illegal expenditure of public moneys. 52 Am.Jur. pp. 2, 4, and 20, Taxpayers Actions, Secs. 2, 5, and 28; Watson v. Kerr, 315 Mo. 781, 287 S.W. 337, 340.

█ As to Section 507.070, supra, and Supreme Court Rule 3.07, appellants insist that the record shows respondent Everett is engaged in the commercial limestone business; that he is a member of the Missouri Lime Stone Producers Association; that he is seeking only personal gain; that respondents do not adequately and fairly represent the resident assessed taxpayers of the county, as a class; that the respondents are not sufficient in number, nor fairly chosen; that they are all closely associated with Everett, who is financing the litigation; that the matter is jurisdictional; and that the court "clearly abused its discretion" in finding that the "plaintiffs were fairly chosen" and the assessed taxpayers of the county adequately represented. We find no merit in these contentions. The mere fact that a taxpayer may have an interest in the litigation in addition to his financial interest as a taxpaying citizen is no defense, since his motive in exercising a legal right is not material. White v. Scarritt, 341 Mo. 1004, 111 S.W.2d 18, 22; Honey Creek Drainage Dist. v. Farm City Inv. Co., 326 Mo. 739, 32 S.W.2d 753, 758.

It is admitted that respondents "are residents and assessed taxpayers of the County of Clinton, Missouri." As taxpayers, there can be no question as to their right and legal capacity to bring and maintain this action for themselves and on behalf of all others similarly situated to enjoin the alleged illegal expenditure of public funds. In such case proof of the expenditure of such public funds for illegal purposes and under void contracts is sufficient to show private pecuniary injury, because of the taxpayer's equitable ownership of such funds and his liability to replenish any deficiency resulting from the misappropriation. Berghorn v. Reorganized School Dist. No. 8, Mo.Sup., 260 S.W.2d 573, 581; Castilo v. State Highway Comm., 312 Mo. 244, 262, 279 S.W. 673; Harris v. Langford, 277 Mo. 527, 211 S.W. 19, 21; Civic League of St. Louis v. St. Louis, Mo. Sup., 223 S.W. 891, 893; Hawkins v. St. Joseph, Mo.Sup., 281 S.W. 420, 421; Clark v. Crown Drug Co., 348 Mo. 91, 152 S.W.2d 145, 147. The assignment is overruled.

Appellants next contend that the court erred in holding that a third-class county has no legal authority, express or implied, to acquire a quarry and manufacture crushed rock for use on the public roads or otherwise, and to sell such stone to Special Road Districts, or other political subdivisions, or to private individuals. In support of the decree, as entered, respondents argue that there is no authority for a county to acquire and operate a rock quarry; that a county is restricted in the use it may make of the taxpayers' money, since taxes may be levied and collected for public purposes only, Art. X, § 3, Constitution of Missouri 1945, V.A. M.S.; that the management of the county's business by the county court is limited to that "prescribed by law", Art. VI, § 7, Constitution of Missouri 1945, V.A.M.S.; State ex rel. Kowats v. Arnold, 356 Mo. 661, 204 S.W.2d 254, 259, 260; that a county may not "make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law", Section 432.070 RSMo 1949, V.A.M.S.; that, while counties are political subdivisions of the state they rank low in grade of corporate existence and their powers are of a lesser nature than a municipal corporation [State ex rel. Audrain County v. City of Mexico, 355 Mo. 612, 197 S.W.2d 301, 303(2)]; that counties possess only public powers, not proprietary powers; that the authority to "purchase needed materials" does not include the implied power to manufacture or produce them, Section 229.040; that the power to "purchase or construct" does not include the power to "maintain and operate"; that specific authority was given the State Highway Commission to acquire and operate state quarries, Sections 226.240 to 226.260; and that the general rule in Missouri with regard to powers of counties is well stated in King v. Maries County, 297 Mo. 488, 249 S.W. 418, 420, as follows: "It has been held uniformly that county courts are not the general agents of the counties or of the state. Their powers are limited and defined by law. They have only such authority as is expressly granted them by statute. * * * This is qualified by the rule that the express grant of power carries with it such implied powers as are necessary to carry out or make effectual the purposes of the authority expressly granted. * * *" And see Blades v. Hawkins, 240 Mo. 187, 195, 112 S.W. 979, 144 S.W. 1198; 20 C.J.S., Counties, § 82, p. 849.

Respondents' contention that the purchase and operation of the quarry was not for a public purpose is based upon the theory that the county was engaged in the business of manufacturing and selling crushed stone to the public, as a business or commercial enterprise, rather than in the crushing of stone for use upon the county roads or in the discharge of county business in the construction and maintenance of county roads. It is on this theory that it is contended the business is private and not public; and that the money of the public raised by public taxation cannot be used therefor. See State ex rel. Kansas City v. Orear, 277 Mo. 303, 210 S.W. 392, 395; Art. X, §§ 1 and 3, Constitution of Missouri 1945, V.A.M.S.

The Constitution of Missouri 1945, recognized the existing counties "as legal sub-

divisions of the state", Art. VI, § 1, and provided that the existing organization of counties should continue until further authorized provisions applicable should be provided. It is admitted that Clinton County is a county of the third class, not under township organization, Art. VI, § 8; and that in such county "there shall be elected a county court of three members which shall manage all county business as prescribed by law, * * *." Art. VI, § 7. Section 231.010 RSMo 1949, V.A.M.S., empowers the county courts of all counties, other than those under township organization, to divide their counties into numbered road districts of convenient size.

Section 229.040 RSMo 1949, V.A.M.S., provides: "Whenever any public money, whether arising from taxation or from bonds heretofore or hereafter issued, is to be expended in the construction, reconstruction or other improvement of any road, or bridge or culvert, the county court, township board or road district commissioners, as the case may be, shall have full power and authority to construct, reconstruct or otherwise improve any road * * * and to that end may contract for such work, or may purchase machinery, employ operators and purchase needed materials and employ necessary help and do such work by day labor."

Section 49.270 RSMo 1949, V.A.M.S., gives the county court the right to purchase real estate for the use and benefit of the county and provides that the county court "shall have control and management of the property, real and personal, belonging to the county." Section 228.180 RSMo 1949, V.A.M.S., provides that "The right of eminent domain is vested in the several counties of the state to condemn private property for public road purpose, including any land, * * * *rock quarries or gravel pits necessary in establishing, building,* grading, *repairing* or draining *said roads* * * *." (Italics ours.)

Section 217.620 RSMo 1949, V.A.M.S., provides that "It shall be lawful for the division of penal institutions to cause per-

sons confined in said prison to work on the state highways or on county highways * * * or at any rock quarry, rock crusher or gravel pit *operated* by the state or *any county* or civil subdivision, *for the purpose of obtaining material for use in the construction or repair of any such highways* * * *." (Italics ours.)

■ In this case the quarry and the additions thereto were acquired by voluntary conveyances and were purchased and paid for prior to the institution of the present action on April 17, 1953. While the court found that it "was not necessary for the defendant county to purchase lands for a rock quarry for road purposes", the judgment appealed from only enjoined the operation of the quarry by the county, the production or manufacture of crushed stone, the budgeting or expenditure of public money therefor and the sale or disposition of crushed rock or stone products, as hereinbefore stated. The court found that "the record does not disclose any finding or order by the defendant county that it was necessary to acquire quarry land for public road purposes"; and further found "that it is not necessary that defendant Clinton County produce crushed stone in order to construct and maintain county roads because an adequate supply of such material is readily available from within and without said county from private producers"; and that "the county has no right to produce crushed rock for roads." Respondents rely upon these findings, as to no necessity, to support their position that the expenditure of public funds for the acquisition and operation of the quarry by the county was illegal. The word "necessity" as here used has no relation to whether public funds are being expended for public rather than private purposes. See State ex rel. Kansas City v. Orear, supra, 210 S.W. 392, 397. We think these findings are unimportant here, because the question as to the "necessity" for the acquisition and operation of the quarry, like the advisability or necessity for a taking of property by eminent domain, was for the county court and was a political and not a judicial matter. See Bowman v. Kansas City, Mo.Sup.,

233 S.W.2d 26, 35; State ex rel. Lane v. Pankey, 359 Mo. 118, 221 S.W.2d 195, 196 (5–7); City of Kirkwood v. Venable, 351 Mo. 460, 173 S.W.2d 8, 11. The circuit court could not in this proceeding substitute its judgment for that of the county court as to the necessity for the county to purchase and operate the rock quarry. There is no contention here that the county court's determination or decision to purchase and operate was brought about by fraud or corruption, or is so manifestly wrong and prejudicial to the public as to create a conviction that it was the result of fraud and disregard of public duty. Sheidley v. Lynch, 95 Mo. 487, 8 S.W. 434. On the other hand, any theory of fraud is rebutted by the great mass of testimony in this record indicating dissatisfaction with the quality, condition, preparation and prices of crushed rock previously furnished by Everett and his associates to the county and to the defendant special road districts.

■ The rock quarry in question was not acquired by eminent domain. The county had full authority to purchase real estate for the use and benefit of the county and it had full authority to acquire quarry real estate. It did acquire it by purchase. It had the authority to control and manage such real estate and it had authority to purchase materials for road construction and repair, including the rock in the quarry.

■ In this case there is no claim that there is any statute which expressly gives to the county power to operate a rock quarry. If such power exists, it must be looked for among those powers which can be implied only as being essential to effectuate the purpose manifested in an express power or duty, conferred, or imposed upon the county by statute. If such a power exists, it must be one related to the subject with which the county has authority to deal in discharging a duty imposed by law. King v. Maries County, supra; Blades v. Hawkins, supra. The right to acquire, own and control a rock quarry and the express grant of power to construct and reconstruct roads carries with it, we believe, the right to use and operate

the quarry for county purposes and to mine, prepare and use such material on the public roads of the county. While it is true that the law is strict in limiting the authority of county courts, "it never has been held that they have no authority except what the statutes confer in so many words. The universal doctrine is that certain incidental powers germane to the authority and duties expressly delegated and indispensable to their performance may be exercised." Blades v. Hawkins, supra, 240 Mo. 187, 197, 112 S.W. 979, 982.

In the case of State ex rel. Wahl v. Speer, 284 Mo. 45, 223 S.W. 655, 660, where statutory provision for incurring indebtedness "'for the erection of a courthouse'" contained no express provision as to incurring indebtedness to purchase a needed site. This court said: "The rule for interpreting statutes, that a power given carries with it, incidentally or by implication, powers not expressed, but necessary to render effective the one that is expressed, would require the construction that authority to incur a debt for the erection of a public building impliedly embraces authority to buy a site for it; and this for the plain reason that without a site the building cannot be erected."

The trial court found the Johnson-Clinton County contract illegal only on the theory that it was prohibited by Section 432.070 RSMo 1949, V.A.M.S., wherein it is provided that no county shall make any contract unless the same shall be within the scope of its powers or be expressly authorized by law. The contract in question, however, was within the scope of the county's powers under the constitutional and statutory provisions hereinbefore referred to. The trial court erred in holding that it was unnecessary for the county to purchase and own and operate the quarry and it erred in enjoining the operation of the quarry, the purchase of machinery and equipment therefor and the production or manufacture of crushed rock for use on the county roads.

In the case of State ex rel. City of Chillicothe v. Wilder, 200 Mo. 97, 105, 98 S.W.

465, 466, relied upon by respondents, it was held that the power and authority *to incur an indebtedness* in excess of five percent of the assessed valuation for the purpose of " 'purchasing or constructing' " waterworks and electric light plants did not include or imply the power *to incur such indebtedness* for the added purpose of " 'maintaining, and operating' " such waterworks and electric light plant, but we think the case has no application under the facts of this case.

We now consider the matter of the preparation and sale of crushed stone to the special road districts for use upon the public roads of the county lying within the respective special road districts. The trial court's theory in entering the injunction clearly appears from conclusion of law, No. 13, as follows: "Because the county has no right to produce crushed rock for roads it follows that the Special Road Districts have no right to purchase such rock from the county and the county has no right to sell to Special Road Districts. For the same reason the county has no right to sell to other political subdivisions and to private individuals." The trial court held that the only powers to be implied from the express powers granted to counties are those "which are *indispensable* to effectuate the express powers"; and that " * * * third class counties have no express power and consequently no implied power to produce road materials * * *." The county was enjoined from selling crushed rock or stone products to the several special road districts and the respective districts were "perpetually enjoined from further performance under the contracts entered into with defendant Clinton County on April 8, 1953, and from directly or indirectly purchasing or in any wise receiving any crushed rock or stone products from said defendant County * * *."

Respondents argue that, "assuming but not admitting a county has power to acquire and operate a rock quarry, there is no power to engage in a commercial enterprise and make sales to other political subdivisions." Respondents insist that the procedure followed by Clinton County, as shown by the record in this case, was not such a joint cooperation with other political subdivisions as is contemplated by Article VI, § 16, Constitution of Missouri 1945, V.A.M.S., and Sections 70.210–70.320 RSMo 1949, V.A.M.S., providing that political subdivisions may cooperate in the development, construction or operation of any public improvement or facility. No effort to comply with the specific provisions of the statutes mentioned appears from this record. However, we do not construe the action of the county in quarrying, crushing and selling crushed stone to the several special road districts of the county for use upon the public roads of the county, lying within the respective districts, as engaging in a commercial enterprise. The record in this case shows that Clinton County, on March 10, 1953, contracted for the quarrying, crushing and stock-piling of in excess of 20,000 tons of stone and that, on April 17, 1953, it contracted to sell in excess of 2000 tons of crushed stone at the quarry to each of the three special road districts at $1.25 per ton. At this price the crushed stone was being furnished by the county to the districts substantially at cost. And further, the county had a substantial public interest in the improvement of the public roads of the county lying within the several special road districts of the county.

In this connection the record shows that the county acquired 3.0764 acres of additional quarry land for $307.64; that Johnson quarried and crushed 23,437 tons of limestone at $1.15 per ton; that the stone was taken from approximately one-fourth of an acre of land; that the usual lease royalty to a landowner is 5 cents per ton, but that it is cheaper to buy the land; that the county furnished the scales and weighman and for two days assisted Johnson with "one dozer" in removing the overburden; and that the shrinkage or loss on stock-piling the crushed stone was about one per cent by weight, 202 tons out of the 23,437 tons stock-piled. There was testimony on behalf of appellants that crushed stone could be produced for $1.25 per ton

"at the plant", including the royalty. Respondent Everett estimated his cost of production in 1953 by comparison with 1952 at $1.30 per ton. He said the county could not pay $1.15 for quarrying and crushing rock and sell it at $1.25 per ton and break even; that there was no profit, but a loss, because the cost of stripping, scaleman, shrinkage, etc., which would make the cost $1.40 to $1.50 per ton on rock sold for $1.25 per ton. However, since August 19, 1953, and at the time of the trial respondent Everett testified that he had been selling crushed rock at his quarry to everybody at $1.00 per ton, but at a loss. The trial court made no finding as to the cost of production, which would vary from quarry to quarry, but found only that there was no showing that the county or any of the defendant Special Road Districts achieved any savings by the operation of the Clinton County quarry. We think the record in this case satisfactorily refutes the theory that the county was engaging in a commercial enterprise. It was not a business venture for profit. The preparation and sale of crushed stone to the districts was within the scope of the county's powers.

As stated, Art. VI, § 7, Constitution of Missouri 1945, V.A.M.S., gives county courts the authority to "manage all county business as prescribed by law." And Section 49.270 RSMo 1949, V.A.M.S., expressly provides: "The said court shall have control and management of the property, real and personal, belonging to the county, and shall have power and authority * * * to sell and cause to be conveyed any real estate, goods or chattels belonging to the county, appropriating the proceeds of such sale to the use of the same * * *." The sale of crushed rock to the special road districts of the county for use upon the public roads of the county lying within the boundaries of the respective districts was for a public purpose, to wit, the improvement of the public roads of the county. There is no suggestion in this record that any private purpose was being served in the sale of crushed stone to the several special road districts. Clearly, the special road districts had authority to buy crushed stone. Sections 233.070 and 233.075 RSMo 1949, V.A.M.S. On this record, it was for the county court, in the exercise of its discretion, to determine whether it was for the best interest of county in the management of the county's business to furnish such crushed rock to the special road districts for use on the public roads. We find no abuse of that discretion.

With reference to the sale of crushed stone at the quarry to private individuals, the court found there was no evidence that the defendant county had adopted or followed any policy in making sales of the crushed stone produced; but that the evidence showed numerous sales to private individuals. We agree with both findings. Appellants argue that the sale of approximately 400 tons of crushed stone from the quarry to private individuals for use within and without public road right of ways and at intersections was insufficient to indicate a commercial enterprise; and that sales were made, and the stone used, to protect and maintain the county roads by rocking muddy drives at intersections. Appellants also contend that the rock sold to individuals "was clearly surplus, produced cheaply, and there was no cost of any kind to the county." The evidence does not sustain the contentions; and the court found that 25 per cent of the county roads of Clinton County had never been surfaced and no surplus of crushed rock was produced. Sales of crushed rock by the county to private individuals for private purposes as shown by this record were properly enjoined.

Appellants further insist that no plaintiff comes into court with "clean hands" and that no right to equitable relief in any respect is shown. Appellants' theory is that by this action respondent Everett is merely trying to perpetuate his long standing non-competitive manner of furnishing poor quality crushed rock at excessive prices for use on county roads; and that the action was brought for personal profit and not in good faith and only "after his loss of his lucrative business." We need not review the evidence relied upon. The

trial judge heard the testimony and found that the action was in good faith and that the evidence was insufficient to show "unclean hands" on the part of any plaintiff. We agree with that finding.

Appellants further contend that respondents are not entitled to an injunction on any issue because they have not shown that any loss, damage or increase in taxes will result from the county's action which is sought to be enjoined. As stated, the trial court, found that "the evidence does not show that defendant Clinton County * * achieved any savings by the operation of the Clinton County quarry." It is immaterial whether the sales to private individuals for private purposes were made at a profit or at a loss. The county could not engage in the business of manufacturing and selling crushed rock to private individuals for private purposes at the expense of the taxpayers. The right to injunctive relief does not turn upon the matter of profit or loss, as such. In determining a taxpayer's pecuniary injury resulting from the unlawful expenditure of public funds, we may not weigh lawful expenditures against unlawful expenditures, because no legal injury results from the lawful expenditures of public funds. Berghorn v. Reorganized School Dist. No. 8, supra, 260 S.W.2d 573, 581.

Appellants further contend that the court abused its discretion in overruling defendants' motion to set aside the submission and judgment and permit additional evidence to be heard and to amend the findings of fact, conclusions of law and judgment. We have reviewed the motion, affidavits and exhibits and are satisfied that no abuse of discretion appears from the court's action in overruling the motion.

In view of the conclusions heretofore reached, it is unnecessary to consider appellants' final contention that the decree as entered prevents the county from future cooperation with the several special road districts under the provisions of Art. VI, § 16, Constitution of Missouri 1945, V.A.

M.S., and the statutes hereinbefore referred to.

Except in so far as the judgment on the first count enjoins the sale of crushed stone by the county to private individuals, the judgment is reversed.

The second count presents a question under "The County Budget Law," Sections 50.670—50.750 RSMo 1949, V.A.M.S. The sum of $12,000 was paid on a contract for road machinery from Class V funds and plaintiffs-respondents claimed the expenditure was illegal and that the amount should have been budgeted and paid from Class III funds. The trial court held the payment illegal and enjoined further payments on the contract from Class V funds.

On January 21, 1935, Clinton County adopted a budget for 1953 covering estimated receipts and expenditures. See Sections 50.680 and 50.710. In Class III, for repair, upkeep and construction of roads and bridges, nothing was set aside specifically for the payment of lease rentals on road equipment or for the purchase of road equipment. There was an item under the head of property purchases-capital outlays, "miscellaneous $3275.00." In Class V, for contingent and emergency expense, there was an item "Contingent and Emergency Fund $33,000.00." See Sections 50.680 and 50.710. It will be noted that the funds set aside and apportioned to Class III "shall be made from the anticipated revenue to be derived from the levies made under section 137.555 RSMo 1949." Section 50.680. With reference to Class V, Section 50.680 provides that the "county court shall next set aside a fund for the contingent and emergency expense of the county * * *. From this class the county court may pay contingent and incidental expenses and expense of paupers not otherwise classified * * *."

Thereafter, on January 21, 1953, the county entered into a contract, which is referred to as a "lease option contract * * for the purchase option of motor graders." Payments after the first year depended on

the county's exercise of options. There is no evidence of the exercise of any option, but an intention to purchase under the contract is admitted and the total price was admitted to be $30,800. No question is raised as to the validity of the contract. A credit of $8,800 was given on the contract for used equipment, motor graders ten or twelve years old. The county clerk certified on the contract of record that "funds for meeting the obligation for the original lease period are on hand, or in the anticipated revenue for the current year, and * * * not otherwise obligated." Thereafter, on January 26, 1953, the county court ordered $12,000 paid on the contract for the two new motor graders and payment was made from the contingent and emergency item in Class V.

The trial court made a finding of fact, supported by testimony presented, "that the motor graders sold * * * on January 21, 1953, had been depreciating and needed replacing for a number of years prior to that date"; and that the need for replacement was known to the official of the county for a number of years. The court held that "the needed replacement (on January 21, 1953) was no emergency"; that the purchase of the motor graders, under the circumstances, was not "a contingency or emergency expense"; that the payment therefor from Class V was illegal and should be enjoined; and that "this equipment should have been budgeted under proposed Class III expenditures." The court enjoined defendant county and its officials from expending or making further payments from Class V of the county's budget for the motor graders.

Appellants contend the court erred in holding that the county could not purchase the motor graders as a Class V expenditure under the county budget law, since the purchase money therefor under the lease option contract was properly and legally budgeted by the county court as a contingent or emergency expense. Respondents' theory is that "the county court has no discretion to use *general revenue* for road purposes when the law provides that such expenditures be set out in Class III and provides a *special fund* from which to pay for the proposed expenditure." (Italics ours.) Respondents say the need for replacement was foreseen and was "not a contingency or emergency" matter; and that the county court had no discretion to use the contingent and emergency funds for "road purposes" which were not an emergency, contingent or incidental expense. There is no contention that motor graders for use in road construction and maintenance were not immediately necessary for the construction and maintenance of county roads, but the argument is that the need for new graders was known and should have been provided for in advance and paid for out of the special funds placed in Class III and not from general revenue in Class V, or as an emergency, contingent or incidental expense when the county court got ready and deemed it necessary in their discretion to trade the old graders in and buy new ones.

 We think it is clear from Sections 50.680 and 50.710 that proposed expenditures for rentals or for the purchase price of road machinery, such as motor graders, are not expressly required to be listed in or paid from Class III funds. The said statutes make no specific references to such items. The purchase price of road machinery was clearly not required to be budgeted under the head of proposed expenditures for repair, upkeep and construction of roads and bridges. The necessity for replacement of such road machinery was in the nature of "current expenses of the county" and as such was payable out of general revenue as a Class V expense, if so budgeted and provided for. It was proper for the county court in its discretion, under the constitution and statutory authority granted to it, to fix the time when the old motor graders were to be traded in on the new ones and to determine whether it was necessary to do so at the particular time that such was done. It was a matter within the discretion of the county court and the circuit court could not control or override the discretionary determination of the county court in the absence of fraud and mis-

feasance. Bradford v. Phelps County, 357 Mo. 830, 210 S.W.2d 996, 999. The $12,000 in question had not been allotted to any other specific purpose and was an unencumbered fund. The possible or probable expense for rentals on, or for the purchase price of new motor graders to be leased or purchased, when the county court decided it was necessary to trade in the old ones and get new ones, was a contingent expense. See definitions of terms. Black's Law Dictionary, 4th Ed. p. 392; 17 C.J.S., pp. 182–185. When the decision to trade was made, it was proper that the $12,000 payment be made from the special fund specifically provided for such an expense in Class V. The judgment enjoining further payments on the motor graders from Class V expenditures was erroneously entered.

As stated, the judgment on the first count is reversed, except as to the injunction against sales to private individuals, as to which it is affirmed. The judgment on the second count is reversed.

All concur.