Dear Mr. Mazzei:
This opinion letter is in response to your question asking what, if any, authority a third class county has to enact an ordinance regulating the use of county roads, canoe and boat rental businesses and waterways within the county. While this office does not pass upon the validity of particular ordinances, this opinion will address the authority of counties to enact ordinances regulating the particular type of conduct set out in your question.
Counties generally have only the authority to enact ordinances pursuant to those powers expressly delegated to them by the legislature, or implied powers, as stated in the following:
 . . . [C]ounties, like other public corporations "can exercise the following powers and no others: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation — not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation and the power is denied."
Lancaster v. County of Atchison, 180 S.W.2d 706, 708 (Mo. banc 1944) quoting Dillon on Municipal Corporations, 3rd Ed., Section 89.
In a later Missouri case, Everett v. County of Clinton,282 S.W.2d 30 (Mo. 1955), the court did find implied power. The test for finding implied power was defined in that case as a power "essential to effectuate the purpose manifested in an express power or duty, conferred, or imposed upon the county by statute." Id., 282 S.W.2d at 37. Everett concerned a third class county having the right to acquire, own and control a rock quarry and the express power to construct roads. The court held these rights included implicitly:
 . . . [t]he right to use and operate the quarry for county purposes and to mine, prepare and use such material on the public roads of the county. While it is true that the law is strict in limiting the authority of county courts, "it never has been held that they have no authority except what the statutes confer in so many words. The universal doctrine is that certain incidental powers germane to the authority and duties expressly delegated and indispensable to their performance may be exercised.
Id., 282 S.W.2d at 37, quoting Blades v. Hawkins,240 Mo. 187, 197, 112 S.W. 979, 982 (1908).
These tests may be applied to your question as follows:
First addressed is your question concerning the regulation of traffic on county roads and bridges in Crawford County. On October 3, 1961, this office issued an opinion to Channing D. Blaeuer, then prosecuting attorney of Randolph County, answering a question concerning that county's authority to regulate parking and vehicular traffic on public roads. Then, and research reveals nothing to change the conclusion at the present, this office found no authority for a third class county to control traffic on public roads. That opinion stated:
 Section 304.130, RSMo 1959, authorizes county courts in class one counties to control traffic on public roads outside of incorporated areas in such county. This appears to be the only statute authorizing any county to regulate traffic on public roads. Counties, like other public corporations, can exercise only power granted them by statute, either in express language or necessarily and clearly implied in language incident to power expressly granted. Any reasonable doubt concerning the existence of a power must usually be resolved against the exercise of such power. [Citations omitted.] It therefore appears that, since there is no statute expressly authorizing third class counties to exercise the power, Randolph County does not have such power.
No statutes granting authority to third class counties to regulate traffic have been enacted since that Attorney General's opinion, and, therefore, it remains valid today.
Your question next addresses a county's authority to regulate trash collection by companies renting canoes and floating devices. The County Option Dumping Ground Law, for those counties which have taken advantage of its terms, provides in Section 64.463, RSMo 1986, that:
 No person shall dispose of any ashes, garbage, rubbish or refuse at any place except a disposal area licensed as provided in sections 64.460 to 64.487.
This particular section was analyzed by the Court of Appeals for the Western District of Missouri in State v. McClary,399 S.W.2d 597 (Mo.App. 1966). That court concluded that any person violating Section 64.463 is guilty of a misdemeanor. However, whether authority to regulate solid waste disposal can be found under powers implied by Section 64.463 would probably depend on a strong factual showing that it is necessary to achieving the purposes of Section 64.463.
In the more recent case of Browning-Ferris Industries ofKansas City, Inc. v. Dance, 671 S.W.2d 801 (Mo.App. 1984), the Western District addressed the subject of controlling solid waste, and concluded this was of the highest priority and, therefore, would authorize a county to take certain actions analyzed in that opinion. In so doing, it quoted Section260.215.2, RSMo which provided that:
 Any city or county may adopt ordinances, rules, regulations, or standards for the storage, collection, transportation, processing or disposal of solid wastes which shall be in conformity with the rules and regulations adopted by the department for solid waste management systems. However, nothing in sections 260.200 to 260.245 shall usurp the legal right of a city or county from adopting and enforcing local ordinances, rules, regulations or standards for the storage, collection, transportation, processing, or disposal of solid wastes equal to or more stringent than the rules or regulations adopted by the department pursuant to sections 260.200 to 260.245.
The court addressed the high priority of public health as follows:
 The preservation of the public health is recognized as a goal of the highest priority. Craig v. City of Macon, 543 S.W.2d 772, 773 (Mo. banc 1976). In Craig, the Supreme Court stated the legislature enacted §§ 260.200-.245 to prevent public nuisances, public health hazards, and the despoilation of the environment that necessarily accompany the accumulation and unmanaged disposal of garbage, refuse and filth. The court noted that throughout human history this menace had led to and intensified disease and plague. Therefore, the legislature, in its wisdom, has forbidden the dumping of solid waste on the ground, in streams, springs, and other bodies of water except through licensed solid waste disposal areas, and other means that do not create public nuisances or adversely affect the public health.
Browning-Ferris Industries of Kansas City v. Dance, supra,671 S.W.2d at 808. (Emphasis supplied.)
Therefore, while no cases have been found directly in point concerning a county's authority to require trash collection by businesses renting canoes and boats, in light of the importance of preventing uncontrolled disposal of solid waste recognized by the court in Browning-Ferris, there may be at least implied authority under the County Option Dumping Ground Law or implied if not express authority under the quoted section of the solid waste disposal statute for this portion of your ordinance. The success of these arguments would no doubt depend in large part upon a factual showing of how much of a solid waste disposal problem these canoes, boats and rafts and other floating devices cause, and how important their control is to accomplish the purposes of the solid waste disposal law and the County Option Dumping Ground Law.
It should be noted that Section 260.215.2, RSMo, does speak of regulations for the collection of solid wastes, though that would seem to refer to regulation of a system of trash collection from homes and businesses, etc. The court in State v.McClary, supra, did indicate that it believed the operator of an unlicensed dump area "would be guilty of a misdemeanor if he aided, abetted, encouraged or solicited any other person to dispose of such wastes in such area and that person disposed of them there." However, the acts of soliciting, receiving and disposing of waste in an unlicensed dump area is considerably different than renting canoes or other boats to persons who might then litter from them. The former is a positive knowing act in violation of a law, whereas the latter only provides another with an opportunity to violate a law requiring disposal only in licensed dumps. It seems doubtful that the persons involved in the two situations would be held responsible in like manner by the law.
We find no authority, expressed or implied, to require posting of notices concerning rights of property owners. We find no authority, expressed or implied, for a county to require identification numbering of floating devices, nor identification of businesses owning these devices, unless a strong showing could be made that such identification is essential to the accomplishment of the purposes of the solid waste laws cited above.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General