## CARTHAGE SPECIAL ROAD DISTRICT OF JASPER COUNTY, Appellant, v. J. C. ROSS et al.

### Division One, February 20, 1917.

1. **PUBLIC ROAD FUND: Devoted to Other Uses.** Section 10481, Revised Statutes 1909, in declaring that the tax of not more than twenty cents authorized by it to be credited to the road district from which said tax is collected shall constitute the road fund of the several road districts of the county, forbids the county court to devote the fund to other uses.

2. ————: **Discretion of County Court.** The county court has no discretion as to the levying of at least ten cents on the hundred dollars directed by the amendment of 1913 to section 10481, Revised Statutes 1909; its duty to levy and appropriate at least that much to special road districts is compulsory, and it can divert the tax to no other purpose. Its discretion under that section and amendment pertains only to the levy of an additional tax of ten cents on the hundred dollars' valuation.

3. ————: **Meaning of Statutes.** The theory of the statutes (Secs. 10481 and 10483, R. S. 1909) is: (1) that the bridges and roads are to be first taken care of, so far as that duty is developed upon the districts, by the constitutional levy for county purposes, to the extent at least of ten cents on the hundred dollars' valuation; (2) if that amount is not sufficient for such purpose the county court may raise it to twenty cents; and (3) in its discretion, it may levy the whole or any part of the twenty-five cent special levy authorized by the constitutional amendment of 1908, to be expended in such manner and through such agencies as are charged by law with the establishment, construction and maintenance of roads and bridges.

4. ———: **Transfer to Other Funds: Modified by Road Laws.** Section 3786, Revised Statutes 1909, declaring that "whenever there is a balance in the county treasury to the credit of any special fund, which is no longer needed for the purposes for which it was raised, the county court may, by order of record, direct that said balance be transferred to the credit of the general revenue fund of the county, or to such other fund as may, in their judgment, be in need of such balance," is still live law as to all the revenue of the county remaining within the control of the county court; but the road fund has by later enactments been removed from the court's control and entrusted to other agents, to be expended by them for a definite purpose.

5. ———: **Diverted to Other Funds.** Revenue for other county purposes cannot be increased at the expense of the roads. The county court after having made a levy of fifty cents on the hundred dollars for county purposes, the maximum tax it is permitted by the Constitution to levy for those purposes, cannot divert ten cents on the hundred dollars of it to other county purposes, but so much of the fifty cents as is collected from property within a special road district as is levied for road purposes must be credited to the treasurer or commissioners of such district.

6. ———: **Discretionary Powers of County Court.** The Legislature has no power to compel the county court to levy the twenty-five-cent tax on the hundred dollars authorized by the constitutional amendment of 1908, but if the tax is levied the county court can apply it to road and bridge purposes, but to no others. But the county court is compelled to levy at least ten cents on the hundred dollars under Sec. 10481, R. S. 1909, for road purposes, and that much at least of the general revenue of the county it must apply to the road districts from which the tax arises, to be spent, not by it, but by the agencies which the statute designates.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair,* Judge.

REVERSED AND REMANDED.

*Gray & Gray* for appellant.

*McReynolds & Halliburton* and *S. W. Bates* for respondents.

BROWN, C.—The following is the statement of facts made by appellant in its brief and adopted by the respondent:

"The city of Carthage and contiguous territory in Jasper County, Missouri, was, under the authority of sections 10576-10586, Revised Statutes 1909, as amended in 1911, organized as a body corporate to be thereafter designated as the "Carthage Special Road District of Jasper County.'

"This suit was brought in the circuit court of Jasper County by the road district as plaintiff against Jasper County and the judges of the county court to restrain the defendants from transferring the funds which the court had set apart, under the provisions of section 11423, Revised Statutes 1909, for road and bridge purposes, and the sole question is whether the road district is entitled to any part of the funds levied and apportioned under said section.

"Acting under the provisions of said section, the county court of Jasper County on the 5th days of May, 1913, after having levied a tax of fifty cents on the one hundred dollars' assessed valuation for county purposes, made the following order:

"Ordered by the court that 'County Revenue Fund' be subdivided and apportioned, as follows:

"All in accordance with the law. Same covering taxes for the year 1913.

"$29,500.00 or 20 per cent for Contingent Fund.

"$36,875.00 or 25 per cent for Pauper Fund.

"$36,875.00 or 25 per cent for Salary Fund.

"$29,500.00 or 20 per cent for Road and Bridge Fund.

"$14,750.00 or 10 per cent for Grand and Petit Jury, Judges and Clerks of Election Fund.

"The $29,500 so apportioned to the Road and Bridge Fund was not received by the county until the collector made his settlement in January, 1914, and the county court used no part of said funds on the roads of the county for the year 1913, because the same were not on hand, but as soon as the same were received, concluded not to do any road work, and treated the whole funds levied for road purposes as a surplus, no longer required for road purposes, and proposed to turn them

over to the county treasurer to pay other current expenses of the county for 1913.

"The records show that the road commissioners of the plaintiff in the year 1913, contemplating this money would be collected and paid over to them for road purposes in the district, constructed roads and bridges and made demands in writing on the county court for the funds, but their requests were first refused because the funds were not on hand, and then when the funds were received, refused altogether, claiming that the funds were a surplus fund no longer needed for the purpose for which they were levied and collected, and the court proposed to transfer them to pay other current expenses of the county.

"The answer admitted making the order above set forth, and also that the county court proposed to apportion as a surplus the $29,500 to the payment of current expenses, on account of there being a deficit in the Pauper Fund, the Jury Fund and the Incidental Fund in the county.

"The answer also admitted that a written demand had been made to the court by the plaintiff for the funds, and that the court had refused to pay any part of the same.

"In addition to the pleadings there was an agreed statement of facts filed by which it was admitted that no part of the funds had been paid to plaintiff or its commissioners; that no part of them had been paid out by the county court; that the county court had drawn no warrants thereon, and that the plaintiff, by its commissioners, had made a written demand on the court for its part of said funds, and at the time said demand was made, there were outstanding obligations of the plaintiff for road work performed by plaintiff in its said district and contracted since the making of the order of May, 1913, and prior to January 1, 1914.

"The court dismissed the plaintiff's bill and it appealed to this court, and, as above stated, the only question is: What shall be done with the funds that were

levied and apportioned for road purposes under the order of the court on May 5, 1913?''

I.   Our road laws remind us of the famous comment of Peter on the epistles of his Beloved Brother Paul: ''In which are some things hard to be understood.'' We have been compelled to approach them frequently during the last few years, and do so with the feeling that we are taking up a bundle of plugs, whittled to suit well enough the local uses that suggested them, but far too small for the apertures into which we are called upon to fit them.  In the attempt to do so it will be of service to consider the broad foundation upon which they rest.  The entire highway system is a unit. The legislative problem is to provide money to construct, improve and maintain these facilities in such a way as to distribute the burden approximately in proportion to the benefit received by each locality, as well as by each tax-payer.  It is evident that this problem is not well solved by a system of little units like our road districts, for it is frequently the case that the most expensive roads must lie over the roughest, most unproductive and least valuable lands.

*Roads a Unit.*

II.   This suit is a conflict between the county and the plaintiff road district as to which of them is entitled to a fund raised by taxation of the property in the plaintiff district.  It is a part of the levy of fifty cents on the hundred dollars valuation for county purposes authorized and limited by section 11 of article 10 of the Constitution, and levied as a road tax in pursuance of section 10481 of the Revised Statutes of 1909, as amended in 1913.  Section 10481 was, as originally enacted, as follows:

*Statutes.*

''The county court in the several counties of this State, at the May term thereof in each year, shall levy upon all real and personal property made taxable by law, outside of incorporated cities, towns and villages, a tax of not more than twenty cents on the one hundred dollars' valuation as a road tax, which levy shall be collected and

paid by the collector into the county treasury as other revenue, and the county treasurer shall place the same to the credit of the road district from which said tax was collected and shall pay the same to.the overseer of said district on the warrants of the county court. The money derived from such road tax shall be expended by the respective road overseers in purchasing necessary tools with which to work the roads in their districts, in purchasing material to build or repair bridges and culverts, and for such other expenditures as may be necessary to keep the roads in their districts in good order: *Provided,* that the construction of all bridges and culverts shall be under the direction or supervision of the county highway engineer.''

Included in the same act was section 10482, passed in pursuance of the constitutional amendment of 1908 (included in article 10 as section 22) authorizing the levy of an *additional* tax of twenty-five cents for road and bridge purposes. The next section of the same act (Sec. 10483, R. S. 1909) is as follows:

''All moneys collected under the levy authorized by section 10481, and paid into the county treasury, shall constitute the road fund of the several road districts, and shall be disbursed only by authority of the county court as provided by law, and no part thereof shall be used to pay costs and damages in opening new roads.''

We are thus enabled to say with certainty that these three sections, together with sections 11 and 22 of article 10 of the Constitution on which they rested, were before the Legislature at the same time, and were enacted as a single plan to raise money for all purposes connected with roads and bridges; and that whatever we may think of their propriety, we must defer to the legislative will and give effect to all their provisions.

We have nothing to do in this case with any other fund than that levied under section 10481.

Up to this point we are impressed with the care and precision with which the Legislature hedged about the fund appropriated for roads and bridges out of the tax

270 Mo.—6

levied under the Constitution for "county purposes." It was not only declared in the section which authorized its levy that it be placed to the credit of the road district from which it was collected and paid to the overseer of such district on warrants of the county court and expended by the overseer, but also declared that it *should constitute the road fund of the several road districts.* In these provisions we can see no evidence of any intention that the county court might devote it at will to other uses.

III.   At the legislative session of 1913 a doubt seems to have arisen as to whether the county court might not, in its discretion, refuse to appropriate any portion of the general revenue for county purposes as a road-and-bridge fund, and for that purpose depend entirely on the additional levy authorized by the constitutional amendment of 1908; and section 10481 was so amended as to require the inclusion of a road tax of at least ten cents on the one hundred dollars' valuation in the levy for county purposes, and provided that the amount thereof collected upon property within any special road district should be paid into the county treasury as other revenue, and that the county treasurer should place the same to the credit of the special road district from which it was collected and "pay the same to the commissioner or treasurer of such special road district on warrants of the county court." [Laws 1913, p. 668.]   It is under this provision of section 10481 as so amended by the Act of 1913 that the plaintiff is now claiming.   It will be seen that this tax is appropriated by the same statute which not only authorized, but imperatively required, its levy for the very purpose from which the county court is now seeking to divert it. The Act of 1913 took effect on March 25th and before the May term at which this levy and distribution was made.   Instead of being, like the levy of twenty-five cents authorized under the constitutional amendment of 1908, *discretionary,* and for general road and bridge purposes, it was *compulsory,* and might, in the discretion reserved

*Discretionary Levy.*

to the county court by the constitutional amendment of 1908, constitute the only road-and-bridge fund. These provisions completely cover the following statement in the respondents' brief: "It is conceded in the case at bar that if the county had appropriated only a meagre amount to the road-and-bridge fund of the revenues collected for county expenditures, then this special road district would have no claim on it. It is not claimed but that the county court had ample authority to subdivide the fund for county revenue purposes under section 11423 as it thought best." The county court had no right to appropriate only a "meagre amount" of the general county revenue for the road-and-bridge fund. It was bound by the compulsion of the statute to levy and appropriate not less than ten cents, and would have violated that obligation had it appropriated less. It is, to put it mildly, *non sequitur* that it could have avoided it by levying the ten cents for the building of bridges and repairing of roads, and then transferring it to the pauper, jury and incidental funds. If the road fund is to be skimped, it must be done through the reduction or omission of the *discretionary* tax authorized by the constitutional amendment of 1908. The theory of the statute (sections 10481, 10482, 10483) is so clearly expressed that it may be easily read from horseback: (1) that the bridges and roads are to be first taken care of, so far as that duty is devolved upon the districts, by the constitutional levy for county purposes to the extent of at least ten cents on the hundred dollars; (2) if that amount is not sufficient for such purpose the county court may raise it to twenty cents; and (3) in its discretion, it may levy the whole or any part of the twenty-five-cent special levy authorized by the constitutional amendment, to be expended in such manner and through such agencies as are charged by law with the establishment, construction and maintenance of roads and bridges. In our opinion the Legislature showed good judgment in assuming that at least one dollar on each thousand of assessed valuation of the rural property of the State can be profitably expended in the construction, improvement and maintenance of our country

roads and bridges, so far as their expense has been charged upon the districts.

IV. The respondent cites section 3786, Revised Statutes 1909, in support of its contention that the county court had the power to transfer this fund to other uses than those connected with roads and bridges. It pro-
vides that: Whenever there is a balance in
Balance      any county treasury in this State to the credit
to Credit
of Fund.     of any special fund, which is no longer needed
for the purpose for which it was raised, the county may, by order of record, direct that said balance be transferred to the credit of the general revenue fund of the county, or to such other fund as may, in their judgment, be in need of such balance.'' The succeeding section limits this right of transfer to ''balances of funds of which the objects of their creation are and have been fully satisfied.''

These sections have stood upon our statute books since their enactment in 1897, without change, except as modified by subsequent legislation charging the road districts, agencies of the State expressly created for such purposes, with control and expenditure of this fund. In so far as these laws are inconsistent with the provisions we have mentioned they must yield to the last expression of the legislative will, which, as we have already shown, is definite and unmistakable. These sections are still living laws in their application to all revenue of the county remaining within the control of the county court. This particular fund has plainly been removed from its control and entrusted to other hands to be expended by other agents, while leaving ample resources at its command for application to any road and bridge purpose which may still remain within the range of its duties. These old provisions cannot stand with these definite and inconsistent expressions of a later legislative policy and must therefore yield to them.

V. We are cited by the respondents to the cases of Holloway to use v. Howell County, 240 Mo. 601, and Decker v. Diemer, 229 Mo. 296, to sustain the right of

the county to transfer this fund.   The first of these
cases was a suit for accounting to ascertain
*Cases*
*Distinguished.*   the balance in the county treasury of road
funds collected by the county upon the
property of the special road district for several years
prior to 1909 and long before the bringing of the suit,
for which no demand had been made.   The case went
off on that ground, and is consequently no authority in
this case.   The Decker case was a suit for road taxes
levied by the county court in 1905, 1906, 1907 and 1908
and appropriated to the road-and-bridge fund.   The suit
was brought May. 11, 1909, more than three months be-
fore the act of 1909, upon which, with its amendment of
1913, the right to recover in this suit is principally
founded.   Neither the constitutional amendment of 1908
nor the acts passed in pursuance of it were involved.
This case is one of first intention and the controlling
questions are now before us for the first time.

VI.   In considering these questions our attention has
been arrested by the general plan evident in recent legis-
lation for raising and expending funds for road and
bridge purposes in connection with sections 11 and 22 of
article 10 of the State Constitution.   The limit
*General*          placed upon the levy for ''county purposes,''
*Legislative*
*Plan.*           including this fund, has been acquiesced in as
sufficient and salutary for all such purposes
until the development of the State developed a growing
necessity for additional expenditure upon its highways.
This resulted in the amendment of 1908 embodied in
section 22, authorizing an ''additional'' levy of twenty-
five cents on the taxable property of the State to be
used for these *and no other purposes whatever.*   In other
words, it was found desirable to increase the amount to
be raised by taxation for this purpose without increasing
the amount to be raised for other county purposes, which
had been found to be entirely satisfactory.   The amend-
ment was adopted for this purpose alone, and legislation
was immediately begun to carry it into effect in accord-
ance with the spirit of economy which it exhibited.   The

amendment had, by affirmative words too plain to be mistaken, made the new power *discretionary* as vested in the county courts and township boards. So that the Legislature was without power to direct them to make the additional levy or any part of it. It could only *permit* it. Under these conditions sections 10481 and 10482, Revised Statutes 1909, were enacted. The first of these omitted the minimum requirement of five cents as it had existed (R. S. 1899, sec. 9436), but reserved the maximum limitation of twenty cents, and required that whatever the levy should be, the proceeds should be paid to the ·overseers of the several road districts which produced them. At its session of 1913 the Legislature repented that it forgot or otherwise omitted to insert a minimum requirement in this section, so that the taxation for other county purposes could not be increased at the expense of the roads, and further amended it by enacting that the levy for road taxes should be not *less* than ten cents, and inserted a proviso that the proceeds of the tax in special districts should be paid to the commissioners or treasurer.

The Act of 1909 · also contained a provision for the levy of the additional tax provided by the constitutional amendment of 1908 in the very words of that amendment, and without any provision for the payment of any part of the money so produced to the road districts. This omission exhibits a plain intent to distinguish between the two funds as to the agencies to which they should be entrusted for expenditure.

It was a sensible scheme. . Taking as a basis the fifty-cent levy authorized by section 11, article 10, of the Constitution, in Jasper County, it limited the general levy for county purposes other than roads and bridges to forty cents, provided a road fund of at least ten cents to be expended by the districts, and provided the means to be expended by the county in the building of bridges, location and opening of roads and other purposes charged upon the county at large. This seems to be the theory upon which the fund raised upon the general levy for county purposes from special districts was apportioned

by the proviso added to section 10481 by the amendment of 1913 as it had been to the other districts by the same section as originally enacted, while it was not applied to the next succeeding section, intending to put into effect the amendment of 1908. It amounted to a declaration by the Legislature that the words "road tax" as used in section 10801, Revised Statutes 1909, continued to have the same meaning and effect which they had standing in the same place in the same section when enacted in 1895. This is the opinion we expressed in State ex rel. v. Everett, 245 Mo. 706, and in which we are confirmed upon re-examination.

It follows that the judgment of the circuit court must be and is reversed and the cause remanded to the trial court for the entry of judgment for the plaintiff in accordance with the views we have herein expressed.

*Railey, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur.