John BRAWLEY, Eldridge Lovelace,
David Schlessinger and Patricia S.
Martin, Plaintiffs–Appellants,

v.

Gene McNARY, County Executive, St.
Louis County, Missouri, et al.,
Defendants–Respondents.

No. 73185.

Supreme Court of Missouri,
En Banc.

June 11, 1991.

Rehearing Denied July 23, 1991.

Mark Brittingham, Robert O. Snyder, J. Peter Schmitz, St. Louis, for plaintiffs-appellants.

Thomas W. Wehrle, County Counselor, Andrew J. Minardi, Assoc. County Counselor, Clayton, for St. Louis County.

Mark G. Arnold, Shulamith Simon, St. Louis, for Riverport.

ROBERTSON, Judge.

This case involves the authority of the St. Louis County Council to expend funds under authority granted by the General Assembly in Sections 94.600–.655, RSMo 1986, relating to expenditures from the Transportation Trust Fund, and Sections 50.020 and 50.030, RSMo 1986, relating to the authority of a county to dispose of a special fund which is no longer needed for the purposes for which that fund was created. The trial court determined that the plaintiffs lacked standing to pursue their action, but despite that determination, proceeded to decide the case on the merits. The Court of Appeals, Eastern District, affirmed the trial court's decision that the plaintiff taxpayers lacked standing to challenge the County's expenditure of the funds in question. This Court reversed the trial court's decision, holding that the plaintiffs did have standing and retransferred the case to the Court of Appeals for consideration of the trial court's decision on the merits. *Eastern Missouri Laborers District Council v. St. Louis County*, 781 S.W.2d 43 (Mo. banc 1989). On retransfer, a divided panel of the court of appeals affirmed the trial court's decision. We granted transfer because of the general interest and importance of the issues raised by the case and have jurisdiction. Mo. Const. art. V, § 10. The judgment of the trial court is affirmed.

I.

From 1976 until 1984, transient guests of hotels and motels in St. Louis County paid the County a three percent tourism tax, under authority of Section 66.390, RSMo 1986. This tourism tax was collected into a convention and tourism fund established by county ordinance. In 1984, the voters of

St. Louis City and St. Louis County approved the collection of a new "convention and visitors" sales tax under Section 67.-619, RSMo 1986, and the creation of a Regional Convention and Visitors Commission composed of members appointed by the executive officers of both the City and the County. With the adoption of the new tax, Section 67.619.5(2) prohibited the levy or collection of the convention and tourism tax permitted under Section 66.390.

Also at issue in this case are sales taxes levied pursuant to Section 94.605 by St. Louis County (the County) "for transportation purposes." Section 94.645 mandates that all monies collected under the transportation tax be put into a "Transportation Trust Fund" and that those monies "shall be appropriated and disbursed only for transportation purposes."

On November 26, 1985, the St. Louis County Council passed a series of four ordinances pertaining to the funds at issue in this case. The first ordinance declared that the funds remaining unexpended in the St. Louis County Convention and Tourism Fund were no longer needed for the purposes for which they were raised. The ordinance purported to transfer $1 million (of a $3,388,302 balance) from the Convention and Tourism Fund into the county's general revenue fund. The second ordinance appropriated $1 million from the general revenue fund to the special projects account, for use in the purchase of approximately 102 acres within the Riverport Project area. A third ordinance appropriated $3 million from the Transportation Trust Fund and transferred it to the Transportation Highway Fund for contribution for the construction of a flood control system around the 102 acre site. The final ordinance authorized the county executive to purchase the land from Riverport, Inc., for $1 million and authorized the county to use up to $3 million to construct a levee, relief wells and pumping stations for flood protection of the Riverport Project area and surrounding roadways.

Under authority of these ordinances, the trial court found that on December 12, 1985, St. Louis County entered into a contract with Riverport, Inc., providing for the County's purchase of approximately 102 of the 522 acres in the Riverport Project. The County intended to use the land as the site of a sports stadium, apparently for purposes that included an attempt to dissuade the St. Louis Football Cardinals of the National Football League from migrating to Arizona. In addition to the purchase of the acreage, the December 12, 1985 contract obligated the County to pay $3 million toward the cost of the construction of a levee, relief wells and a pumping station (the flood control measures). The land within the Riverport Project area lies within the flood plain of the Missouri River and is subject to flooding. The trial court found that the levee, relief wells and pumping station were required "for flood protection of the Earth City Expressway and the stadium and supporting facilities." The trial court's finding was apparently based in part on the stipulation entered between the parties that "a levee, relief wells and pumping station have been built to protect the adjacent roadways and the property from flooding from the Missouri River."

The trial court also found that the total cost of the flood control measures was approximately $7,771,583. Further, the trial court found that the Earth City Expressway is located between Interstate 70 and the Pritchard Farm Road in the flood plain of the Missouri River, that the Earth City Expressway is an arterial road owned and maintained by St. Louis County and that prior to the construction of the flood control measures, the expressway flooded, requiring the diversion of a substantial volume of traffic, which in the absence of flooding, used the expressway for access to Pritchard Farm Road and Creve Coeur Mill Road to the south and St. Charles Rock Road to the north. The trial court found that the construction of the flood control measures "was the least expensive method of flood-proofing Earth City Expressway between I–70 and Pritchard Farm Road" and that the county's contribution to the construction of that levee was but a portion of the total cost of the construction. Our calculation fixes the County's contribution at approximately 38.6 percent of the cost.

## II.

### A.

■ The taxpayers challenge several of the trial court's findings of fact asking this Court to discount those factual findings that are detrimental to their legal argument. However, as this was a court tried case, we defer to the trial court's findings of fact, given the trial court's superior ability to judge the credibility of witnesses, Rule 73.01(c)(2), and affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

### B.

■ Section 50.020 permits the governing body of a county to transfer to the credit of its general revenue fund "the balance in any county treasury in this state to the credit of any special fund, which is no longer needed for the purpose for which it was raised." Section 50.030 limits the authority of the county legislative body to transfer balances of special funds to circumstances in which "the objects of their creation are and have been fully satisfied." The taxpayers assign initial error to the trial court's holding that the County Council had authority pursuant to these statutes to transfer $1 million of the $3,388,302 balance in the convention and tourism fund to the county's general revenue fund.

The money reposed in the convention and tourism fund arrived there through the levy and collection of the tax authorized under Section 66.390. The convention and tourism fund was county money, subject to appropriation by the County Council "for no other purposes than set forth in Section 66.395." Section 66.398, RSMo 1986. Section 66.395 permitted use of the funds for three purposes: (1) to promote convention and tourism business; (2) to work with other agencies, bureaus, boards, and associations to promote a convention and tourism business; and (3) to contract with others for the furnishing of service and supplies connected with the promotion of convention and tourism business.

With the voters' approval of the tax permitted in Section 67.619, the County's convention and tourism duties ended. The County's tourism duties were undertaken by the Regional Convention and Visitors Commission (the Commission). Section 67.619.5 prohibited further collection of the convention and tourism tax by the County upon the adoption of the new regional convention and visitors sales tax.

The Commission is empowered by Section 67.607, RSMo 1986, to perform nine specified categories of acts, the first three of which are essentially identical to and serve the purposes of the convention and tourism tax previously collected by the County under Section 66.390. Taxes collected under Section 67.619 are not County funds and are not subject to County Council appropriation. Instead, Section 67.619 taxes are held by the Commission and expended pursuant to a majority vote of the Commission. Section 67.611, RSMo 1986.

We conclude, as did the trial court and a unanimous panel of the court of appeals, that with the establishment of the St. Louis Regional Convention and Visitors Commission, St. Louis County's needs for promotion of convention and tourism business were met. Thus, it was altogether appropriate for the County Council to determine that "the objects of [the special fund's] creation are and have been fully satisfied." Section 50.030, RSMo 1986. It was also appropriate for the County Council to determine that the balance of the fund was "no longer needed for the purpose for which it was raised." Section 50.020, RSMo 1986.

The taxpayers, however, urge that at the time the County transferred the $1 million from the convention and tourism fund to its general revenue fund, the balance in the County's convention and tourism fund was $3,388,302, and that subsequent to that transfer to its general revenue fund, the County has continued to use monies remaining in the convention and tourism fund for tourism purposes. Apparently, the taxpayers' claim is that the County should have transferred the entire balance in the

convention and tourism fund to its general revenue fund and that the County's failure to do so is proof that the money in the convention and tourism fund continues to be needed by the County.

We have previously concluded in this case that the County possessed authority, under Sections 50.020 and 50.030, to transfer all the funds in its convention and tourism fund. Neither Section 50.020 nor Section 50.030 mandate that the entire balance in any special fund be transferred to the general revenue account. The funds remaining in the St. Louis County convention and tourism fund were no longer needed, because a legally mandated use of the funds no longer existed. The fact that the county chose not to transfer the entire balance to general revenue does not alter the legal conclusion that the St. Louis County possessed the statutory authority to transfer the funds. We reject the taxpayers' argument.

As a final thrust on this point, the taxpayers turn to Section 50.030 which limits the applicability of Section 50.020 to "funds not otherwise provided for by law." Seizing the language in Section 66.398, which limits use of the convention and tourism fund to the purposes set out in Section 66.395 and "for no other purposes," the taxpayers claim that the creation of the Regional Convention and Visitors Commission is a fund "provided for by law" within the meaning of Section 50.030 and that the County was obligated to transfer its convention and tourism fund to the Commission. In support, the taxpayers cite *Carthage Special Road District of Jasper County v. Ross*, 270 Mo. 76, 192 S.W. 976 (1917).

*Ross* is inapposite. By its own language, *Ross* applies only where a later statute makes specific, mandatory provisions for disposition of the funds. There is neither a specific nor a mandatory statutory provision directing the disposition of the County's convention and tourism fund. In the absence of specific, contrary language, Sections 50.020 and 50.030 permit the decision reached by the County Council.

In sum, the record fully supports the finding that St. Louis County's needs for the promotion of convention and tourism business were met through the establishment of the St. Louis Regional Convention and Visitors Commission which was adequately funded pursuant to the tax levied under Section 67.619. Therefore, the funds remaining in the St. Louis County convention and tourism fund were properly found to be surplus in a special fund no longer needed for the purpose for which it was raised and subject to the transfer to the County's general revenue fund by the legislative body of the County pursuant to Section 50.020. Such a legislative determination, if within the law, is not subject to judicial reversal unless arbitrary or unreasonable. *State ex rel. Wagner v. St. Louis County Port Authority*, 604 S.W.2d 592, 596 (Mo. banc 1980). The County's decision in this case was within the law and was neither arbitrary nor unreasonable. The taxpayers' attack on the expenditure from the convention and tourism fund is denied.

### C.

The taxpayers next assign error to the trial court's determination that the County's appropriation of $3 million from its transportation trust fund as a contribution to the Riverport flood control measures was a lawful expenditure. They argue that the levy, relief wells and pumping station were designed primarily to protect private property and were, therefore, not for transportation purposes as required by Section 94.645, RSMo 1986.

Section 94.605 permits St. Louis County to impose a sales tax "for transportation purposes." Section 94.645 mandates that all monies collected under the transportation tax be put in a "Transportation Trust Fund" and that those monies "shall be appropriated and dispersed only for transportation purposes." Section 94.600(9) defines "transportation purposes" with regard to St. Louis County to mean "the construction, reconstruction, repair and maintenance of streets, roads and bridges which are part of a county-urban road system established by the governing body of the county."

*Webster's Third New International Dictionary* 1362 (1976) defines "maintenance" to include "the labor of keeping something in a state of repair or efficiency." The taxpayers in this case entered into a stipulation which agreed that "levee, relief wells and pumping station have been built to protect the adjacent roadways and the property from flooding from the Missouri River." Based on this stipulation, it is beyond cavil that the flood control measures constructed are for transportation purposes in that they keep the expressway in a state of repair and efficiency.

The taxpayers argue that the real and primary purpose of the levee was to protect the Riverport Project area; the protection of the expressway was but incidental to that purpose, they insist. The taxpayers thus contend that the expenditure violated the law in two ways: First, the expenditure was not *only* for transportation purposes as required by Section 94.645 and second, the expenditure violates Article VI, sections 23 and 25 of the Missouri Constitution. We disagree.

It is difficult to imagine a governmental expenditure for transportation purposes that excludes all private benefit. Roadways serve modern communities in a multitude of ways. From one perspective, roads are essentially tools of private economic development. Roads permit vehicular access to places unaccessible without them. As a result, new land is developed for commercial and residential use; private profit and private convenience often result. Roads carry goods and services to places of need and want. Private industry and private persons need and want of goods and services. Indeed it is the fact that all of these varied and multitudinous private uses are served, as opposed to a use benefitting a single private entity, that renders the road a public expenditure. Thus an expenditure for transportation purposes can never be purely for transportation purposes. Private benefit nearly always flows from a transportation expenditure. It is enough for purposes of this case that the parties stipulated that the flood control measures protect the expressway and that

the trial court found that these flood control measures were the least expensive means by which the County could protect and maintain the expressway.

Article VI, section 23, provides:

No county, city or other political corporation or subdivision of the state shall ... grant public money or thing of value to or in aid of any corporation, association, or individual except as provided in this constitution.

Article VI, section 25, provides in pertinent part:

No county, city or other political corporation or subdivision of the state shall be authorized to ... grant public money or property to any private individual, association or corporation....

These constitutional prohibitions "are not violated simply because incidental benefits may accrue to private interests." *State ex rel. Jardon v. Industrial Development Authority of Jasper County,* 570 S.W.2d 666, 674 (Mo. banc 1978). This Court determined that an expenditure from the public treasury is for a public purpose if it is "for the support of the government or for some of the recognized objects of government, or directly to promote the welfare of the community." *Dysart v. City of St. Louis,* 11 S.W.2d 1045, 1047 (Mo. banc 1928), Thus,

[t]he law does not require us to determine whether the public or private citizens benefit "more" by reason of the legislation. Rather, the rule is that if the primary purpose of the act is public, the fact that special benefits may accrue to some private persons does not deprive the government action of its public character, such benefit being incidental to the primary public purpose.

*State ex rel. Atkinson v. Planned Industrial Expansion Authority of St. Louis,* 517 S.W.2d 36, 45 (Mo. banc 1975).

We repeat: In this case, the trial court found, as the taxpayers stipulated, that the levee served to protect both the expressway and the Riverport Project area. Moreover, the trial court found that the construction of the "levee, relief wells and pumping station was the least expensive method of flood-proofing Earth City Ex-

pressway between I-70 and Pritchard Farm Road." Where the county employed the least expensive method of achieving an appropriate governmental objective—the protection of a well-traveled roadway from the ravages of flood water—we find no violation of the constitutional prohibitions contained in Article VI, sections 23 and 25. The fact that a private project reaps a substantial benefit from the existence of the levee does not violate the constitutional provision where the governmental entity employs the least expensive method of achieving a legal, appropriate, governmental, and public purpose.

Finally, the taxpayers urge that Riverport had a preexisting obligation under County zoning ordinances to construct the flood control measures and that the County's agreement to share in the costs was therefore illegal. No factual finding of the trial court supports this position.

The taxpayers rely on *Berghorn v. Reorganized School District No. 8, Franklin County,* 364 Mo. 121, 260 S.W.2d 573 (1953), and *Everett v. County of Clinton,* 282 S.W.2d 30 (Mo.1955). Neither case helps their cause. *Berghorn* stands for the proposition that a public school district may not expend its funds to support a parochial school, even where the public school district argues that such support results in reduced expenditures for the plaintiff taxpayers. But the constitutional basis of this Court's decision in *Berghorn* is Article IX, section 8 of the Missouri Constitution, which strictly prohibits an expenditure of public funds in aid of religion, not Article VI, sections 23 and 25. Nor do we believe that Article IX, section 8 analysis may be transposed to Article VI, sections 23 and 25. *Everett* upholds a trial court injunction prohibiting a county from selling crushed rock to private persons where there is no surplus rock produced by the quarry above the county's needs, but does not base its conclusion on Article VI, sections 23 and 25. Instead, the Court apparently finds

that sales to private persons from the county quarry violated Article X, sections 1 and 3, which require that taxes be collected for public purposes only.

Once it is determined that the flood control measures in question here served a public purpose, the wisdom or folly of the County's agreement to take on a portion of the expenditure of construction is a legislative one, not subject to judicial second-guessing in the absence of proof "showing bad faith or manifest abuse of ... authority," *Weber v. Missouri State Highway Commission,* 639 S.W.2d 825, 828 (Mo. 1982) or that the decision "was brought about by fraud or corruption, or is so manifestly wrong and prejudicial to the public as to create a conviction that it was the result of fraud and disregard of public duty." *Everett,* 282 S.W.2d at 37.[1] On this record, we find no allegations of fraud, abuse of authority, bad faith or corruption. The point is denied.

### III.

The judgment of the trial court is affirmed.

BLACKMAR, C.J., and HIGGINS, COVINGTON, and HOLSTEIN, JJ., concur.

RENDLEN, J., dissents in separate opinion filed.

FLANIGAN, Special Judge, dissents and concurs in dissenting opinion of RENDLEN, J.

RENDLEN, Judge, dissenting.

I respectfully dissent.

In 1975 the General Assembly adopted § 66.390, RSMo, which authorized the County to levy a convention and tourism tax. The County, responding to the prompting of the legislature, promulgated Ordinance 7584, which levied a three percent tax on sales or charges for all rooms

---

1. The taxpayers seem to agree. Their brief before the court of appeals states: "We do not say that St. Louis County did not have a right to agree to take over an additional $3,000,000 road building expense, only that they should not now put on a witness from the County Highway Department to testify that their $3,000,000 contribution to the levee was agreed to as a method of saving money."

paid by transient guests of hotels and motels within the county. In 1982, however, the legislature passed Senate Bill 711, which permitted a new set of taxes to provide, upon voter approval, funding for a regional economic development district, including a regional convention and visitor's commission. The voters disapproved the measure but in 1984 approved Senate Bill 709, which established the present St. Louis Regional Convention and Visitor's Commission and provided for a new sales tax of up to three and three-quarters percent. The new tax was codified at § 67.619, effective January 1, 1985, subsection 5(2) of which provided that as long as the new tax remains in effect, the former County Convention and Tourism Tax under § 66.390 should no longer be collected. Sections 66.390 through 66.398, however, have not been repealed.

Ordinance 12,362, enacted on November 26, 1985, declared that the $3,388,302 balance remaining in the Convention and Tourism Fund collected under § 66.390 was no longer needed for the purpose for which it was raised. Therefore $1,000,000 of this money was transferred to the General Revenue Fund and in turn transferred to the Special Projects Fund by Ordinance 12,364 to be used for the purchase of land at Riverport to construct the domed stadium. Appellants question the validity of these transfers under the governing statutes.

Section 67.607(9) expressly grants the new Regional Convention and Visitors Commission the power to:

> Contract with the county and city, or any convention and visitors bureau thereof, to allow such county or city, or any convention and visitors bureau thereof, to pay over to the commission the proceeds of any convention and tourism tax or gross receipts tax on hotels and motels imposed by such county or city for the purpose of promoting conventions and tourism, or providing and maintaining facilities therefor.

In spite of the explicit statutory provision, this procedure was not employed.

Having failed to follow the statutory procedure specifically made available to it for reallocation of these funds, the County seeks to justify its actions on the basis of §§ 50.020 and 50.030, RSMo, which read as follows:

> 50.020. Whenever there is a *balance* in any county treasury in this state to the credit of any *special fund, which is no longer needed for the purpose for which it was raised,* the county commission may, by order of record, direct that said *balance* be transferred to the credit of the general revenue fund of the county, or to such other fund as may, in their judgment, be in need of such balance. (Emphasis added.)

> 50.030. Nothing in § 50.020 RSMo (1986) shall be construed to authorize any county commission to transfer or consolidate any funds not otherwise provided for by law, excepting balances of funds of which the objects of their creation are and have been fully satisfied.

First, the County's contention that the funds were "no longer needed for the purpose for which [they] were raised" is belied by the fact that the following expenditures were made from the fund after the three percent tax under § 66.390 was no longer collected:

06/15/85   $300,000.00   Veiled Prophet Fair

10/07/85   $250,000.00 St. Louis Symphony promotional loan

11/26/85   $1,000,000.00   Transfer to General Revenue Fund as authorized by Ordinance 12,362

05/29/87   $150,000.00   Veiled Prophet Fair Foundation

08/07/87   $50,000.00 1988 World Indoor Short Track Speed Skating Championship

Contrary to the majority, I find instructive the case of *Carthage Special Road District of Jasper County v. Ross*, 270 Mo. 76, 192 S.W. 976 (1917), in which the predecessor of § 50.020 was held not to control where a later statute made specific provisions for disposition of the funds. "The provisions of a specific statute prevail over a general one." *State ex rel. Tate v. Turner*, 789 S.W.2d 240, 241 (Mo.App.1990). The *Turner* decision construed § 50.020 in conjunction with § 514.480, RSMo Supp.

1989, which stated that funds collected for a law library fund were to be applied for maintenance and upkeep of the law library and no other purpose was authorized, thus § 50.020 was inapplicable. *Id.* Further, Section 50.030 refers to "funds not otherwise provided for by law." Monies in the Convention and Tourism Law were specifically "provided for by law" (§ 66.390) to be applied for convention and tourism purposes, and because § 67.607(9) specifically provides that the County may pay over tourism monies to the Commission by contract, § 50.020 is inapplicable. Under the standards of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), the trial court has erroneously applied the law, and its ruling should be reversed. "It is well settled that money raised for a special municipal purpose, under express limitation to a particular use, cannot lawfully be used for another purpose, and if used, the special fund must be reimbursed." 15 McQuillin, *Municipal Corporations* § 39.50. $1,000,000 should be transferred from General Revenue to the Convention and Visitors' fund.

In regard to the monies from the Transportation Trust Fund, the majority opinion overlooks vital, undisputed evidence regarding the history of the Riverport Project. In June 1984, the St. Louis County Council, acting upon the application of Sverdrup Corporation, d/b/a Riverport Associates, enacted two ordinances rezoning 518 acres to Flood Plain Planned Commercial and Flood Plain Planned Industrial. Each ordinance referred to the levee and other flood control measures, which required approval from the Army Corps of Engineers, and provided that "[t]he developer will be required to operate and maintain the levee, pump station and interior stormwater control system." The zoning ordinances also required the developer to make certain improvements to the Earth City Expressway. As provided in the ordinances, Riverport Incorporated (a sub-subsidiary and later a successor to Sverdrup Corporation) applied for and obtained a permit from the Corps of Engineers to construct the levee. Though the County acknowledges that in its negotiations with Sverdrup Corporation the developer agreed to construct the levee, the County adopted Ordinances 12,364 and 12,365 and thus allowed the appropriation of up to $3,000,000 from the Transportation Trust Fund to pay part of the construction costs.

Section 94.645, RSMo 1986, provides that all monies collected under the transportation tax shall be deposited:

> in a special fund to be known as the "Transportation *Trust* Fund." All moneys in such transportation trust fund shall be appropriated and disbursed *only for transportation* purposes as enumerated herein. (Emphasis added.)

As applied to St. Louis County, § 94.600(9) provides that "transportation purposes" shall include "repair and *maintenance of streets, roads* and bridges." Earth City Expressway is a road maintained by St. Louis County and adjacent to the Riverport Project, and paragraph 1 of the parties' stipulations provides that the Riverport development "consists of 522 acres which includes land upon which a levee, relief wells and pumping station have been built to protect the adjacent roadways *and the property* from flooding from the Missouri River (emphasis supplied)."

I would hold that this appropriation of Transportation Trust Fund monies for protection of the roadway and the property is unauthorized by the statute and Ordinance 12,364 is thus invalid. It is well stated that:

> A fund that is derived from a special levy or one created for a specific purpose is a special fund and is in the hands of municipal officers *in trust.* In such case the municipality is merely a custodian, and its duties relative to special funds are purely ministerial. It may *not* use or divert them *for other than the special purpose* for which they were collected.

56 Am.Jur.2d *Municipal Corporations,* § 582 (1971). *See also* 15 McQuillin, *Municipal Corporations* §§ 39.45, 39.50 (3rd

ed. rev. 1985); 4 Sands and Libonati, *Local Government Law* § 26.07 (1982).[1]

In Missouri, a local government may "for its own purposes lawfully divide its funds or allocate them in any manner it sees fit or subject its general revenue funds to particular public purposes, *so long as it does not do so contrary to statute* or its charter." *Automobile Club of Missouri v. City of St. Louis,* 334 S.W.2d 355, 364 (Mo.1960); *State ex rel. Spink v. Kemp,* 365 Mo. 368, 283 S.W.2d 502, 514 (banc 1955) (emphasis supplied). In the present case the parties have stipulated that the levee was constructed for protection of the property *and* the roadway; use of trust funds for this purpose goes beyond the specific "transportation purposes" enumerated in the statute, which include construction and maintenance of roads. The appropriation runs afoul the provision of § 94.-645 which states that "moneys in such transportation trust fund shall be *appropriated* and disbursed *only for transportation purposes as enumerated herein* (emphasis supplied)." Under no reasonable construction of the statute can it be said the appropriation for the levee was *only for transportation purposes.* Though the levee protected the 522–acre Riverport site, the County occupied only 102.62 acres, yet proposed to bear approximately half of the levee costs. Under *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), this Court may reverse the trial court's judgment in a court-tried case when it is not supported by substantial evidence, is against the weight of the evidence, erroneously declares the law, or erroneously applies the law. The trial court here has misapplied the law, and its judgment should be reversed. As I would reverse on the statutory grounds, I do not reach the constitutional issue whether the appropriation of county funds for the levee was a grant of public money to a private corporation in violation of Mo. Const. art. VI, §§ 23 and 25.

---

1. Numerous cases support this general proposition. Particularly analogous is *City of Birmingham v. Wood,* 243 Ala. 480, 10 So.2d 666, 669–70 (1942), where the court reversed the lower court's ruling that expenditures for a war memorial entrance outside a public stadium could be paid from a trust fund established for maintenance, repair or operation *of the stadium. See also, e.g., Lakewood v. Rees,* 132 Ohio St. 399, 8 N.E.2d 250, 251–52 (1937) (revenues derived from municipal waterworks may not be transferred to general revenue fund and used to meet governmental expenses and municipal obligations); *City of Hollywood v. Hollywood Lodge # 21, Fraternal Order of Police,* 329 So.2d 366, 369–70 (Fla.App.1976) (proceeds of tax for firemen and policemen's pension funds may not be used for city employees' general pension fund).