LaROSE, Judge.
 

 The City of St. Petersburg and the City of St. Petersburg Police Pension Board of Trustees (collectively, the City) appeal a final summary judgment finding that former police officers who left service prior to vesting in the City’s police pension fund were entitled to a refund of their contributions to the fund. We affirm.
 

 Sections 185.19,185.08, and 185.35, Florida Statutes (2000), are central to the parties’ dispute. Section 185.19 provides as follows:
 

 (1) If any police officer leaves the service of the municipality before accumu
 
 *324
 
 lating aggregate time of 10 years toward retirement and before being eligible to retire under the provisions of this chapter, such police officer shall be entitled to a refund of all of his or her contributions made to the municipal police officers’ retirement trust fund without interest, less any benefits paid to him or her.
 

 Section 185.35 requires municipalities with their own police pension plans to meet minimum benefits and standards of chapter 185. The section, in part, provides for premium tax income that may be used to pay extra benefits under a pension plan:
 

 (1) Premium tax income. — If a municipality has a pension plan for police officers ... which, in the opinion of the division [of retirement of the department of management services], meets the minimum benefits and minimum standards set forth in this chapter, the board of trustees of the pension plan ... may:
 

 (a) Place the income from the premium tax in s. 185.08 in such pension plan for the sole and exclusive use of its police officers ... where it shall become an integral part of that pension plan and shall be used to pay extra benefits to the police officers included in that pension plan; or
 

 (b) May place the income from the premium tax in s. 185.08 in a separate supplemental plan to pay extra benefits to the police officers ... participating in such separate supplemental plan.
 

 The premium tax income provided in section 185.08 authorizes a State excise tax on casualty insurance premiums collected by insurance companies. The tax may amount to .85 percent of the gross premium receipts from casualty insurance policyholders within a municipality’s boundaries. § 185.08(1). The excise tax is payable annually after the municipality’s passage of an ordinance assessing and imposing it. § 185.08(3);
 
 cf. City of Miami v. Carter,
 
 105 So.2d 5 (Fla.1958) (explaining that proceeds of insurance premium tax merely pass through a city for ultimate use and benefit of pension members);
 
 City of Hollywood v. Hollywood Lodge No. 21, Fraternal Order of Police,
 
 329 So.2d 366, 370 (Fla. 4th DCA 1976) (explaining that insurance premium tax is a city tax to be used for the benefit of police pension plan members);
 
 City of Wilton Manors v. Fla. Dep’t of Mgmt. Servs. Div. of Ret.,
 
 Nos. 08-4766, 09-0933, 09-0934, 09-0935, 09-0936, 09-0937, 09-0938, 2009 WL 1700310, *16 (Fla.Div.Admin.Hearings, May 28, 2009) (explaining that State is merely a collection agency for insurance premium taxes levied by a city).
 

 Relying on section 185.35(1), the City claims that any refund is a pension “benefit” that must await its receipt of premium tax income funds. The City contends that it cannot provide a refund because it lacks sufficient premium tax income revenue. The City offers no estimate as to when such funding would be available to pay refunds. The former police officers counter that a refund is not a benefit and nothing in section 185.35(1) requires that refunds come from premium tax income funds.
 

 The terms “benefits” and “minimum benefits” in chapter 185 are undefined. Thus, the City sees ambiguity. To resolve the purported ambiguity, the City urges us to adopt a meaning of the word “benefit” as defined by its witness from the Department of Revenue (DOR). With scant testimony about the development of an agency interpretation, the DOR witness opined that contribution refunds are “minimum benefits” that need not be refunded. We do not agree.
 

 
 *325
 
 The DOR witness’s opinion is neither binding nor persuasive. We see nothing in section 185.35(1) compelling the conclusion that a contribution refund is a benefit. Moreover, section 185.23(2) authorizes the DOR “to adopt rules pursuant to ss. 120.536(1) and 120.54 to implement the provisions of [chapter 185].” But the DOR engaged in no formal rulemaking. The DOR witness’s opinion, little more than a bare assertion, does not reflect the reasoned development of agency policy.
 
 See Edward J. Seibert, A.I.A. Architect & Planner, PA. v. Bayport Beach & Tennis Club Ass’n,
 
 573 So.2d 889, 891 (Fla. 2d DCA 1990) (holding that expert testimony is admissible to explain the character of an object in order to determine if it complies with a statute, ordinance, or code, but an expert should not be allowed to testify concerning questions of law);
 
 Dep’t of Revenue v. Vanjaria Enters.,
 
 675 So.2d 252, 255 (Fla. 5th DCA 1996) (holding that tax assessment procedure used by DOR was based on unpromulgated rule and was, thus, void);
 
 Regal Kitchens, Inc. v. Dep’t of Revenue,
 
 641 So.2d 158, 162 (Fla. 1st DCA 1994) (holding that an administrative agency may not use a declaratory statement as a vehicle for the adoption of a broad agency policy or to provide statutory or rule interpretations that apply to an entire class of persons);
 
 Wilton Manors,
 
 2009 WL1700310, *15 (“[RJeliance on ... ‘historical knowledge’ of the statute constitutes an unadopted rule.... ”).
 

 The City also contends that our decision in
 
 City of Dunedin Municipal Firefighters Retirement System v. Dulje,
 
 453 So.2d 177 (Fla. 2d DCA 1984), compels the conclusion that refunds are benefits.
 
 Dulje,
 
 too, provides no solace to the City.
 
 Dulje
 
 dealt with refunds from contributions to a firefighter’s retirement system payable upon death and the firefighter’s designation of his beneficiary(ies).
 
 Id.
 
 at 178-79. The applicable statute referred to beneficiaries of death benefits under municipal plans as well as beneficiaries under the state retirement system.
 
 Id.
 
 at 179. Because the municipal plan dictated the firefighter’s beneficiaries, but the statute allowed the firefighter to designate the beneficiaries, the statute prevailed over the ordinance.
 
 Id. Dulje
 
 has no bearing on the issue before us.
 

 The former police officers advance a more persuasive and simple argument: chapter 185 is not ambiguous and the legislative intent is easily seen in the plain language of the statute. Under section 185.19(1), the former police officers
 
 “shall be entitled to
 
 a refund of all of his or her contributions ... without interest, less any benefits paid to him or her.” (Emphasis added). Although the parties direct us to no decision directly on point, an Attorney General opinion addressed the following question:
 

 If a policemen’s retirement fund purchases an insurance policy for a policeman with his contributions to the fund and the policeman leaves the force before accumulating ten years of service, must the fund refund to him 100% of his contributions notwithstanding the fact that the cash value of the insurance policy is less than his contributions?
 

 Op. Att’y Gen. Fla. 58-141 (1958). In construing the “shall be entitled to” language of section 185.19(1) in the context of section 185.06, which permits trustees of the fund to invest in insurance or annuity contracts, the Attorney General concluded:
 

 [Section 185.06] has no direct bearing upon the rights of participants in the fund. A police officer, therefore, is entitled to a refund of 100% of his contributions to the fund when he leaves the force, notwithstanding the fact that an insurance contract purchased on his be
 
 *326
 
 half with his contributions has a cash value less than his contributions.
 

 Op. Att’y Gen. Fla. 58-141.
 

 We see no reason why the requirements of section 185.35, relating to premium tax income, should have a bearing on the rights of the former police officers here. They “shall be entitled to” them contributions without interest and less any benefits paid. § 185.19(1). The use of the mandatory term “shall” normally creates an obligation impervious to judicial discretion.
 
 Lexecon Inc. v. Milberg Weiss Bershad, Hynes & Lerach,
 
 523 U.S. 26, 35, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). “Generally, ‘shall’ is interpreted to be mandatory where it refers to some action preceding the possible deprivation of a substantive right and directory where it relates to some immaterial matter in which compliance is a matter of convenience.”
 
 Shands Teaching Hosp. & Clinics, Inc. v. Sidky,
 
 936 So.2d 715, 721-22 (Fla. 4th DCA 2006) (quoting
 
 Kinder v. Stale,
 
 779 So.2d 512, 514 (Fla. 2d DCA 2000) (internal citations omitted)). In the context of the contributions, the Legislature’s use of the phrase “shall be entitled to” is a command and not a matter of convenience.
 

 The City next argues that requiring a refund creates an unconstitutional unfunded mandate under article 10, section 14 of the Florida Constitution.
 
 [1]
 
 We are not persuaded. Section 185.19(1) does not create a benefit or enhance the status of the officers. It merely establishes an entitlement to a refund. And, as noted earlier, no premium tax income is required as a source for those funds.
 
 See
 
 § 185.35(1).
 

 Finally, we find the City’s estoppel argument unavailing. The City contends that the former police officers are bound by the terms of their employment contracts which included a pension provision, apparently set by ordinance, that their contributions were forfeited absent vesting. Any such agreement, however, seems contrary to the legislative intent and public policy of section 185.01
 
 [2]
 
 and may be void.
 
 T.C.B. v. Dejo’t of Children & Families,
 
 816 So.2d 194 (Fla. 1st DCA 2002). We need not delve further, however. The City con
 
 *327
 
 cedes that the former police officers are entitled to their refunds but if and only when funds are available. We cannot say that section 185.19 subjects the former police officers to such a state of uncertainty.
 

 We affirm the trial court’s final summary judgment.
 

 Affirmed.
 

 WHATLEY and NORTHCUTT, JJ„ Concur.
 

 [1]
 

 . A governmental unit responsible for any retirement or pension system supported in whole or in part by public funds shall not after January 1, 1977, provide any increase in the benefits to the members or beneficiaries of such system unless such unit has made or concurrently makes provision for the funding of the increase in benefits on a sound actuarial basis.
 

 [2]
 

 . 185.01. Legislative declaration
 

 (1) It is hereby found and declared by the Legislature that police officers ... perform both state and municipal functions ... and that their activities are vital to public welfare of this state. Therefore the Legislature declares that it is a proper and legitimate state purpose to provide a uniform retirement system for the benefit of police officers ... and intends, in implementing the provisions of s. 14, Art. X of the Slate Constitution as they relate to municipal police officers' retirement trust fund systems and plans, that such retirement systems or plans be managed, administered, operated, and funded in such manner as to maximize the protection of police officers' retirement trust funds. Therefore, the Legislature hereby determines and declares that the provisions of this act fulfill an important state interest.
 

 (2) This chapter hereby establishes, for all municipal pension plans now or hereinafter provided for under this chapter, including chapter plans and local law plans, minimum benefits and minimum standards for the operation and funding of such plans, hereinafter referred to as municipal police officers' retirement trust funds. The minimum benefits and minimum standards set forth in this chapter may not be diminished by local ordinance or by special act of the Legislature, nor may the minimum benefits or minimum standards be reduced or offset by any other local, state, or federal plan that may include police officers in its operation, except as provided under s. 112.65.